Filed 7/16/18; Certified for Partial Publication 8/15/18 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>JULIO CESAR OLIVERA ZEPEDA,<br><br>　　　Defendant and Appellant. | A146679<br><br>(Sonoma County<br>Super. Ct. No. SCR646237) |

Defendant Julio Cesar Olivera Zepeda appeals a judgment entered upon a jury verdict finding him guilty of aggravated sexual assault of a child (Pen. Code,[1] § 269, subd. (a)(4)), forcible lewd acts on a child (§ 288, subd. (b)(1)), and continuous sexual abuse of a child (§ 288.5). He contends the evidence is insufficient to support a finding that he committed four of the crimes through force, violence, fear, or duress, and that the trial court erred in instructing the jury as to another of the counts. We shall affirm the judgment.

## I. BACKGROUND

Defendant was the stepfather of the victim of his crimes (Minor). He and Minor's mother (Mother) married in 2009. The events in question took place in late 2013 and early 2014, when Minor was 10 and 11 years old.

Defendant was about 5 feet 11 inches or six feet tall, and weighed approximately 200 pounds. Minor was approximately four and a half feet tall and weighed 80 or 90 pounds.

---

[1] All undesignated statutory references are to the Penal Code.

### Minor's Testimony at Trial

Minor shared a bedroom with her younger sister (Sister), and defendant shared a bedroom with Minor's mother (Mother).

One night, while Mother was in the shower and Sister was in bed, Minor was on a small couch with defendant, watching him play a video game. Defendant told Minor, "Let's play a game." He touched her "privates," underneath her clothing, with his finger, and rubbed her, until Mother got out of the shower.[2] Defendant told Minor not to tell anyone. When asked if defendant hurt her, Minor replied that "[h]e hurt [her] mentally," and that he hurt her feelings.

Defendant touched Minor on other occasions. Once, when Minor was 11 years old, he touched her uncovered "private" with his "private."[3]

### Minor's Interview

The jury saw a recording of a forensic interview Minor had with a social worker in February 2014. Minor said defendant had touched her "private" more than one time, sometimes when Mother or Sister were showering. A week or two before the interview, defendant had been playing a video game, and he paused the game, got off the bed, moved her to the other side of the bed, "squished" her toward him, and pulled her pants down. He put his hand between her legs, then "started putting his mouth," or licking her after her underwear had been pulled off. Then he put his "private" into Minor's "private," and "started moving it around, like a worm" with his hand; it also touched her anal area. Defendant asked Minor if she liked it, but she did not respond, thinking that if she said yes, he would continue, and if she said no, he would have continued until she said yes.

Minor told the interviewer that sometimes defendant rubbed her "front part" with his finger, and it would sometimes hurt her.[4] The first time he touched her genitals, he

---

[2] Minor was shown a drawing of a child and asked to circle the area defendant touched; she circled the front genital area.

[3] Shown a drawing of a male, Minor circled the genitals to indicate the part of defendant's body that touched her, and she said she preferred to call it the "private."

made her lie down, put his hand down her pants and rubbed her genitals. He told her "shh, shhh," so she wouldn't be loud, because it hurt when he rubbed her. He rubbed so fast she felt it burned her, and he got a wet napkin for her to keep her from saying "ow, ow" loudly enough for Mother to hear. She was 10 or 11 years old, and in fifth grade, at the time.

Minor said defendant touched her approximately twice a week.[5] Minor recalled defendant touching her genitals, in his bedroom, when Mother and Sister were out grocery shopping. Sometimes he would turn off the light, and on one occasion, he "pull[ed] [her] to that side," and put his "mouth and tongue on the private." Defendant began by touching Minor with his hands, and he touched her "with his tongue and his private" less than five times. On one occasion, he grabbed Minor's hand and moved her hand toward his "private," until she touched it with the palm of her hand.

The last time defendant touched Minor, she was sleeping on the same mattress as Sister. Minor was against the wall to avoid being close to defendant. While Mother and Sister were sleeping, defendant moved Sister out of the way, moved Minor closer to him, spread her legs, and "use[d] his hand" and did "the licking."

Minor said she was afraid to tell anyone what had happened because she did not know what defendant might do to her, Mother, or Sister; she was concerned he might abuse Sister as well.

### Defendant's Interview

Defendant spoke with two police detectives after being read his rights.[6] He initially denied having touched Minor inappropriately, but his version of events changed as the interview progressed. On one occasion as he and Minor were playing, he put his

---

[4] She also stated he sometimes would touch her chest area and "squeeze it."

[5] It appears the abuse began a couple of months before Christmas 2013 and continued until Minor reported it in early February 2014. Minor turned 11 in January 2014.

[6] The interview was conducted in a combination of English and Spanish, defendant's native language.

feet on her stomach, and she "put . . . the feet in that part." He told her not to do so. He said that one time, "I'm putting my mouth in her" for "like—two seconds." He said he was playing with Minor and Sister on the bed, and "she tries to put my hand in there," "close to vagina." He said he used his tongue on Minor's vagina for "[t]wo or three seconds." He had moved her underwear to the side. He said that once or twice, he touched her with his hand, over her clothing.

Upon further questioning, defendant said he had touched Minor with his hands or mouth "[a]round five" times. He later said he had touched her vagina with his hand five or six times, skin to skin. The first time, he was picking Sister up, and Minor wanted him to pick her up as well. He grabbed her from behind and put her on the bed, and touched her vagina. Another time, he was tickling Minor while playing with her and Sister, and he touched Minor's vagina, underneath her pants. Another time, he touched "[t]he top" with his penis. Defendant said he had touched Minor's vagina with his mouth once or twice; one of those times had been "in top of the clothes."

### *Verdicts*

The jury found defendant guilty of two counts of aggravated sexual assault of a child—oral copulation (§ 269, subd. (a)(4); counts two and three); seven counts of committing a forcible lewd act on a child (§ 288, subd. (b)(1); counts four through ten); and one count of continuous sexual abuse of a child (§ 288.5; count twelve). Counts four through seven were based on four instances of defendant touching Minor's vagina; count eight was based on Minor's hand touching defendant's penis; count nine was based on defendant's penis touching her vagina; and count ten was based on his penis touching her anus. The trial court sentenced defendant to a total term of 56 years plus 30 years to life.

## II. DISCUSSION

### A. *Sufficiency of Evidence of Force or Duress*

In counts four through seven, defendant was convicted of four charges of committing a forcible lewd act on Minor by touching her vagina. (§ 288, subd. (b)(1).) He contends the evidence does not support a finding that the offenses were forcible, and

4

that they should therefore be reduced to the lesser included offense of a lewd act upon a child. (§ 288, subd. (a).)

" 'The proper test for determining a claim of insufficiency of evidence in a criminal case is where, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " (*People v. Babcock* (1993) 14 Cal.App.4th 383, 386.)

Section 288, subdivision (a) applies to "any person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child." Subdivision (b)(1) provides that "[a]ny person who commits an act described in subdivision (a) by use of *force*, violence, *duress*, menace, or fear of immediate and unlawful bodily injury on the victim or another person, is guilty of a felony . . . ." (Italics added.)

"Force" for purposes of this statute has been interpreted to mean "any force that is 'different from and in excess of the type of force which is used in accomplishing similar lewd acts with a victim's consent.' " (*People v. Alvarez* (2009) 178 Cal.App.4th 999, 1005.) This may include "acts of grabbing, holding and restraining that occur in conjunction with the lewd acts themselves. (See, e.g., *People v. Bolander* (1994) 23 Cal.App.4th 155, 160–161 ['defendant's acts of overcoming the victim's resistance to having his pants pulled down, bending the victim over, and pulling the victim's waist toward him' constituted forcible lewd conduct][, overruled in part on other grounds in *People v. Soto* (2011) 51 Cal.4th 229, 248, fn. 12]; *People v. Neel* [(1993) 19 Cal.App.4th 1784,] 1790 ['defendant's act of forcing the victim's head down on his penis when she tried to pull away and grabbing her wrist, placing her hand on his penis, and then "making it go up and down" ' constituted forcible lewd conduct][, overruled in part on other grounds in *People v. Soto*, at p. 248, fn. 12]; *People v. Babcock*, *supra*,

5

14 Cal.App.4th at p. 388 [force element met where the defendant grabbed the victims' hands and made them touch his genital area].)" (*Alvarez*, at p. 1005.) " 'A defendant uses "force" if the prohibited act is facilitated by the defendant's use of physical violence, compulsion or constraint against the victim other than, or in addition to, the physical contact which is inherent in the prohibited act.' " (*People v. Garcia* (2016) 247 Cal.App.4th 1013, 1024.) "Whether a defendant used 'physical force substantially different from or substantially in excess of that required for the lewd act' [citation] is properly left as an issue for the jury to resolve." (*People v. Babcock*, *supra*, 14 Cal.App.4th at p. 388.)

The court in *People v. Thomas* (2017) 15 Cal.App.5th 1063, 1071 (*Thomas*), recently explained: " 'Force' includes circumstances where the victim did not want to engage in the act and the evidence does not otherwise establish the victim's positive cooperation in act or attitude. [Citation.] It also includes the force used to accomplish 'the penetration and the physical movement and positioning of [the victim's] body in accomplishing the act.' " The court there found substantial evidence of force where the defendant took the hand of the victim, who was four or five years old, led her to the bathroom, and positioned her body on the sink before sexually molesting her, and the victim testified she was scared. (*Id*. at p. 1072.) Similarly, appellate courts have found substantial evidence of force where a defendant pulled down the child victim's underwear and " 'rolled over' " onto her, which a reasonable jury could have found immobilized her and pinned her to the bed (*In re Asencio* (2008) 166 Cal.App.4th 1195, 1205–1206 [forcible sexual penetration within meaning of § 289, subd. (a)]) and where the defendant positioned the six-year-old victim on top of him, pulled her pants down, digitally penetrated her, then made her " 'scoot down' " and placed his penis in her vagina (*People v. Young* (1987) 190 Cal.App.3d 248, 258 [rape by force, § 261, former subd. (2)]).

Duress in the context of section 288 has been defined to mean " 'a direct or implied threat of force, violence, danger, *hardship* or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would

not have submitted.' " (*People v. Leal* (2004) 33 Cal.4th 999, 1004.)  In *People v. Veale* (2008) 160 Cal.App.4th 40, 46–47 (*Veale*), the court concluded there was sufficient evidence of duress where the victim was seven years old at the time of the molestation; the molestations took place while the victim was alone with the defendant in a bedroom; the defendant was the victim's stepfather and hence an authority figure; and the victim feared defendant and was afraid he would kill her or her mother if she told anyone he was molesting her.

The court in *Veale* relied on *People v. Cochran* (2002) 103 Cal.App.4th 8 (*Cochran*), overruled in part on other grounds in *People v. Soto*, *supra*, 51 Cal.4th at page 248, footnote 12.  (*Veale*, *supra*, 160 Cal.App.4th at pp. 48–49.)  *Cochran* explained that " '[t]he total circumstances, including the age of the victim, and [her] relationship to defendant are factors to be considered in appraising the existence of duress.'  [Citation.] Other relevant factors include threats to harm the victim, physically controlling the victim when the victim attempts to resist, and warnings to the victim that revealing the molestation would result in jeopardizing the family.  [Citations.] [¶] The fact that the victim testifies the defendant did not use force or threats does not require a finding of no duress; the victim's testimony must be considered in light of her age and her relationship to the defendant.  Thus, in *People v. Pitmon*[ (1985)] 170 Cal.App.3d 38, 47–48, 51[, overruled in part on other grounds in *People v. Soto*, at page 248, footnote 12], the court found sufficient evidence of duress despite the victim's testimony the defendant did not use force or violence and never threatened to hurt her.  The court stated that 'at the time of the offenses, [the victim] was eight years old, an age at which adults are commonly viewed as authority figures.  The disparity in physical size between an eight-year-old and an adult also contributes to the youngster's sense of [her] relative physical vulnerability.' " (*Cochran*, at pp. 13–14, citing *People v. Sanchez* (1989) 208 Cal.App.3d 721, 747–748 [sufficient evidence of duress when eight-year-old victim saw defendant grandfather as father figure, he told her she should not tell anyone and that if she did so her mother would hit her, and he physically pulled her and required her to perform sexual acts] and *People v. Superior Court (Kneip)* (1990) 219 Cal.App.3d 235, 239 ["Where the

7

defendant is a family member and the victim is young, other courts have also looked to factors such as the position of dominance and authority of the defendant and his continuous exploitation of the victim in determining the existence of force or fear."].)

Similarly, the court in *Cochran* concluded the evidence supported a finding of duress where the victim was nine years old; the defendant was her father; he was five feet nine inches tall, she was four feet three inches tall, and he outweighed her by about 100 pounds; and the sexual acts occurred in the family home. (*Cochran*, *supra*, 103 Cal.App.4th at p. 15.) Moreover, videotaped evidence showed the defendant directed and coached the victim what to do; she was reluctant to engage in the activities; she gagged while orally copulating him and curled up on the sofa away from him; she continued only reluctantly and in compliance with parental authority; and she complained he was hurting her. (*Ibid*.) The victim testified that she was not afraid of the defendant and that he never grabbed or forced her, but she also testified she was mad or sad about what he was doing to her, that he gave her money or gifts when they were alone together, and he told her not to tell anyone because he would get in trouble and could go to jail. (*Ibid*.) The court concluded: "This record paints a picture of a small, vulnerable and isolated child who engaged in sex acts only in response to her father's parental and physical authority. Her compliance was derived from intimidation and the psychological control he exercised over her and was not the result of freely given consent. Under these circumstances, given the age and size of the victim, her relationship to the defendant, and the implicit threat that she would break up the family if she did not comply, the evidence amply supports a finding of duress." (*Id*. at pp. 15–16, fn. omitted.) Relying in part on *Veale* and *Cochran,* the court in *Thomas*, *supra*, 15 Cal.App.5th at pages 1072–1073, noted, "*When the victim is young and is molested by her father in the family home, duress will be present in all but the rarest cases*." (Italics added.)

Based on these principles, we conclude the evidence is sufficient to support a conclusion that the four charged acts of vaginal touching were accomplished through force or duress. Minor described defendant making her lie down the first time he molested her, before rubbing her genitals so fast she felt it burned her. On another

occasion, he physically moved Minor, "squished" her toward him, and pulled her pants down before putting his hand between her legs. Another time, while Minor was sleeping against the wall to avoid defendant, he moved her closer to him, spread her legs, and "use[d] his hand." This evidence is sufficient to show defendant used force to facilitate at least some of his acts of touching Minor's genitals.

In any case, the evidence supports a finding that defendant committed these acts through duress. Defendant was in a position of authority over Minor: he was her stepfather, the father of her younger sister, and they lived in the same house. He was almost a foot and a half taller than she was and more than 100 pounds heavier. The abuse began when Minor was 10 years old. The first time he touched her vagina, she described him making her lie down, and when his rubbing burned her, she followed his direction to use a wet napkin. He told her not to tell anyone what had happened. The molestations took place when Mother was out of the house, in the shower, or asleep. Minor tried to sleep as far from defendant as possible to avoid being molested. She was afraid to tell anyone what had happened because she did not know what he would do to her, Mother, or Sister. This record, like that in *Cochran*, "paints a picture of a small, vulnerable and isolated child who engaged in sex acts only in response to her [step]father's parental and physical authority." (*Cochran*, *supra*, 103 Cal.App.4th at p. 15.)

Defendant's reliance on *People v. Espinoza* (2002) 95 Cal.App.4th 1287 for the proposition that there was insufficient evidence of duress is unavailing. The victim in *Espinoza*, at age 12, was older than Minor here. (*Id*. at p. 1292.) Moreover, during the act in question, the defendant in *Espinoza* did not grab or restrain the victim, and she neither cried nor offered resistance. (*Id*. at p. 1320.) Here, defendant physically compelled Minor to submit to sexual acts, and she protested when he hurt her during the first molestation. In any event, more recent authorities, including *Cochran*, *Veale*, and *Thomas*, persuade us that the record before us is sufficient to support a finding of duress in connection with the four counts alleging vaginal touching.

9

**B.** *Instruction Regarding Oral Copulation*

During its deliberations, the jury sent a note to the court asking, in connection with the second count of oral copulation (count three), "Definition of oral copulation: [¶] 1. [D]oes this include over the top of clothing?" The trial court referred the jury to the general instructions on oral copulation, which correctly stated, as pertinent here, "*Oral copulation* is any contact, no matter how slight, between the mouth of one person and the sexual organ or anus of another person. Penetration is not required." (See *People v. Grim* (1992) 9 Cal.App.4th 1240 [defining the crime]; see also *People v. Dement* (2011) 53 Cal.4th 1, 42–43, disapproved on another point in *People v. Rangel* (2016) 62 Cal.4th 1192, 1216.) The court then told the jury that the question of whether oral copulation occurred over the top of clothing was one for the jury to decide.[7]

Defendant notes that he stated in his interview that he had touched Minor's vagina with his mouth once or twice, and that one of those incidents was "in top of the clothes." He contends that the jury's question indicates it had his statement in mind and that the trial court should have instructed the jury that oral copulation requires skin-to-skin contact as a matter of law. He argues we should therefore reverse the verdict on count three.

We disagree. The parties have drawn our attention to no published cases in this state considering whether the presence of clothing defeats a charge of oral copulation,

---

[7] Defense counsel did not object to the court's response to the jury's question. Having failed to do so, defendant waived the issue. (See *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1193; *People v. Bohana* (2000) 84 Cal.App.4th 360, 373.) Moreover, it is clear from the record that the trial court carefully considered the jury's question and, having solicited counsel's input and conducted its own research without finding any clear answer to its question, properly exercised its discretion by referring the jury back to the approved instructions. (See *People v. Beardslee* (1991) 53 Cal.3d 68, 97 ["Where the original instructions are themselves full and complete, the court has discretion under section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information."]; *People v. Moore* (1996) 44 Cal.App.4th 1323, 1331 ["By advising the jury to reread the cohabitation instruction, which was full and complete for purposes of the facts before it, the trial court fulfilled its duty under section 1138."].) We nevertheless address defendant's claim on its merits.

and our own research has disclosed none.  However, we are guided by *People v. Ribera* (2005) 133 Cal.App.4th 81, 83 (*Ribera*), which considered whether anal penetration through clothing was sodomy.  (§ 286.)  The child victim in that case was wearing underwear when the defendant " 'poked' his penis 'really hard' into her 'behind,' " hurting her.  (*Ribera*, at p. 84.)  On appeal, the defendant contended his actions constituted penetration by a foreign object—i.e., the victim's clothing—rather than sodomy.  (*Id*. at pp. 85–86; § 289.)  The appellate court rejected his argument that skin-to-skin contact was necessary to establish the crime of sodomy, reasoning that section 286, which defined sodomy as "sexual conduct consisting of contact between the penis of one person and the anus of another person" (§ 286, subd. (a)) contained no express or implied requirement that the contact be skin-to-skin.  (*Ribera*, at p. 85.)  It was "immaterial whether there was any clothing or barrier between the anus and the penis at the time of the penetration."  (*Id*. at p. 86.)  Finally, the court reasoned, "common sense dictates that it makes no difference whether a victim is clothed as long as penetration occurs.  We believe that 'the legislature did not intend "that a piece of clothing as flimsy as a pair of shorts or even a girl's panties" would insulate a defendant from punishment for performing' sodomy on a child."  (*Ibid*.)

For this final point, the court in *Ribera* relied on *State v. Pearson* (Iowa 1994) 514 N.W.2d 452, which concluded that skin-to-skin contact was not necessary to establish a " 'sex act'" under Iowa Code section 702.17,[8] and that "prohibited contact may occur even though the specific body parts . . . are covered."  (*Pearson*, at p. 455.)  The court went on:  "Whether intervening material prevents contact must be determined on a case-by-case basis, considering the nature and amount of the intervening material.  If the intervening material would, from an objective viewpoint, prevent a perception by the participants that the body parts . . . have touched, contact has not occurred."  (*Ibid*.)

---

[8] Iowa Code section 702.17 provides that a number of activities constitute sex acts, among them "[c]ontact between the mouth and genitalia."

This result is consistent with California law concluding contact through clothing constitutes sexual contact for purposes of another statutory scheme. In *People v. Whitlock* (2003) 113 Cal.App.4th 456, the court considered whether a defendant's act in touching a child's genitals over her clothing met the Sexually Violent Predators Act (Welf. & Inst. Code, § 6600 et seq.) definition of substantial sexual contact, which included masturbation of either the victim or the offender. (*Whitlock*, at pp. 459–460, 462–464 & fn. 3.) The court noted that the common definition of masturbation " 'encompasse[d] any touching or contact, however slight, of the genitals of either the victim or the offender, with the requisite intent.' " (*Id.* at p. 462.) The court concluded the question was not "the amount of the contact but rather whether genital contact was made. [Citation.] Whether the genital touching occurs over clothing is not determinative. Masturbation as it is . . . commonly understood can occur under clothing and over clothing." (*Id.* at p. 463; accord, *People v. Carlin* (2007) 150 Cal.App.4th 322, 333.)

In light of these authorities, we conclude the trial court properly treated the question of whether contact through clothing constituted oral copulation as one of fact for the jury. As the court noted, clothing may consist of something as flimsy as nylon pantyhose or underwear, or as substantial as bomb disposal clothing. Whether the clothing prevented "contact" may properly be considered on a case-by-case basis.[9]

_____

[9] Defendant does not contend that the evidence is insufficient to support two convictions of oral copulation.

12

## III.  DISPOSITION

The judgment is affirmed.

_____
Schulman, J.*

We concur:

_____
Streeter, Acting P.J.

_____
Reardon, J.

---

*Judge of the Superior Court of California, City and County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13

Filed 8/15/18

**CERTIFIED FOR PARTIAL PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JULIO CESAR OLIVERA ZEPEDA,<br><br>        Defendant and Appellant. | A146679<br><br>(Sonoma County<br>Super. Ct. No. SCR646237)<br><br> ORDER CERTIFYING OPINION<br> FOR PARTIAL PUBLICATION<br><br> NO CHANGE IN JUDGMENT |

THE COURT:

        The opinion in the above-entitled matter filed on July 16, 2018, was not certified for publication in the Official Reports.  After the court's review of a request under California Rules of Court, rule 8.1120, and good cause established under rule 8.1105, it is hereby ordered that the opinion should be published, with the exception of part II.A., in the Official Reports.

Dated:

_____
Reardon, Acting P.J.

Trial Court:   Sonoma County Superior Court

Trial Judge:   Hon. Gary A. Medvigy

Counsel:

David McNeil Morse, under appointment by the Court of Appeal, for Defendant and Appellant.

Kathleen A. Kenealy, Acting Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Seth K. Schalit and Sharon Wooden, Deputy Attorneys General for Plaintiff and Respondent.