Filed 2/14/24  P. v. Boswell CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>   v.<br><br>TRAVIS LEE BOSWELL,<br><br>      Defendant and Appellant. | D081117<br><br><br>(Super. Ct. No. SCN408911) |

APPEAL from a judgment of the Superior Court of San Diego County, Sim von Kalinowski, Judge.  Affirmed.

Theresa Osterman Stevenson, by appointment of the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Maxine Hart, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Travis Lee Boswell of two counts of oral copulation with a child 10 years of age or younger (counts 1 & 2, Pen. Code § 288.7,

subd. (b));[1] eight counts of lewd or lascivious acts with a child under 14 years of age by duress (counts 3–10, § 288, subd. (b)(l)); and one count of exhibiting harmful matter to a child with sexual intent (count 11, § 288.2, subd. (a)). The jury also found true special allegations as to counts 3 through 10 that Boswell had substantial sexual conduct with the victim, his daughter, within the meaning of § 1203.066, subd. (a)(8). The trial court sentenced Boswell to a determinate term of 51 years plus an indeterminate term of 30 years to life in prison.

Boswell asserts there was insufficient evidence to support the jury's findings that the victim was 10 years of age or younger for counts 1 and 2 and that he committed the acts in counts 3 through 10 by use of duress. In addition, he asserts the trial court erred by admitting evidence of additional uncharged acts; improperly instructing the jury on expert testimony concerning the way in which victims typically disclose sexual abuse; and imposing consecutive sentences on counts 5 through 10 pursuant to section 667.6. We are not persuaded by any of these assertions and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Boswell has three daughters. His oldest daughter has a different mother than the younger two and was no longer living with Boswell at the time of the charged incidents. We will refer to the younger two daughters as Jane Doe (Jane) and her sister (Sister). In late 2019, Jane, the youngest daughter, disclosed to a friend from school that Boswell had been making her do inappropriate things with him. The friend told her mother, and the mother reported the allegations to the police and child welfare services.

---

[1]     All further unspecified statutory references are to the Penal Code.

2

The police contacted Jane's mother (Mother), Boswell's wife, and she agreed to have Jane participate in a forensic interview that same day. During the interview, Jane disclosed an incident the previous summer during which Boswell had made her take her clothes off and put his penis in her mouth. She also disclosed that Boswell had touched her vagina with his hand on other occasions, including at least once when she was 10 years old and in the 5th grade. She said that the abuse started when she was about 6 years old, in the first grade, and living in Georgia, but she could not recall the details of the first time it happened.

After the forensic interview, Mother agreed to follow the police officers to the station to conduct a pretext call with Boswell. She confronted Boswell with the allegations that Jane had made. Boswell began to whine and denied the allegations, but did not do so adamantly. Later that evening, a social worker went to the family home to discuss a safety plan. Boswell agreed to leave the home, so that Jane and Sister could stay there with Mother.

The police spoke with Sister after Boswell left. Sister initially denied that Boswell had ever touched her inappropriately, but a couple of days later, she called the police officer and disclosed that Boswell had also sexually abused her, primarily when the family lived in Arizona when she was younger.

Around the same time, Mother conducted a second pretext call with Boswell. She told Boswell that Sister had also made similar allegations and asked him, "Why would they both say this?" After some further conversation, Boswell admitted that he had sexually abused all three of his daughters. He said that he had them do "[o]ral stuff" "both ways," but that he never forced them and was trying to teach them to "not be afraid of sex." He also verified an allegation by Sister that she vomited once when he put his penis too far

3

into her mouth. He said that the abuse had occurred primarily in other states with the other girls, and in California with Jane.[2]

The police arrested Boswell the following week, and took him to the station for questioning. Boswell initially denied the allegations, but eventually admitted that he had tried to "teach" the girls to be comfortable with their bodies and sex. He said that he touched Jane's vagina, and that he had her touch his penis, and that he had her perform oral sex on him on two occasions, about one week apart in the summer of 2019, when she was 11 years old and living in California. He also admitted to similar conduct with Sister, approximately once a month for about a year, when they were living in Arizona, and with his oldest daughter before that.

The district attorney charged Boswell with 2 counts of oral copulation of a child 10 years old or younger, 8 counts of lewd and lascivious conduct with a child under the age of 14, and one count of sending harmful matter to a minor. The charges related solely to Boswell's conduct with Jane in California.

Jane, Sister, and Mother each testified at trial. The prosecution presented testimony from a police officer and social worker involved in the investigation, and Christina Schultz—a forensic interviewer and program manager for the Child Advocacy Center North San Diego County—who also served as an expert on the way in which children generally disclose sexual abuse. The prosecution also played recordings of the forensic interview of Jane., the second pretext call between Boswell and Mother, and the police interrogation of Boswell for the jury. The court also admitted into evidence

---

[2]    The family lived in Arizona and Georgia before moving to California in December 2016. The record is consistent with Boswell's suggestion that much of the abuse that occurred in California involved Jane.

4

screenshots of text messages that Jane exchanged with her friend disclosing the abuse. Boswell did not testify and the defense did not present any other witnesses on his behalf.[3]

The jury convicted Boswell on all asserted charges and made true findings as to each of the special allegations included in the complaint. The trial court sentenced Boswell to two indeterminate terms of 15 years to life on counts 1 and 2; stayed the sentence for counts 3 and 4; and sentenced him to an additional determinate term of 51 years, comprised of 6 consecutive terms of 8 years each for counts 5 through 10 plus a 3 year term for count 11.

Boswell filed a timely notice of appeal.

## DISCUSSION

### I. Substantial Evidence Supports the Jury's Verdict

Boswell raises two independent arguments regarding the sufficiency of the evidence to support the jury's verdict: 1) that there was insufficient evidence to support the jury's finding that he committed two separate acts of oral copulation on Jane while she was 10 years of age or younger, as alleged in counts 1 and 2; and 2) that there was insufficient evidence that he committed lewd and lascivious acts on Jane "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury" to support the convictions under section 288, subdivision (b) in counts 3 through 10.

### A. *Standard of Review*

"It is the prosecution's burden in a criminal case to prove every element of a crime beyond a reasonable doubt." (*People v. Cuevas* (1995) 12 Cal.4th 252, 260.) " 'In reviewing a challenge to the sufficiency of the evidence, we do

---

[3]     Given the sensitive nature of the case, we discuss the testimony and evidence in more detail, *post*, only as necessary to resolve Boswell's arguments on appeal.

5

not determine the facts ourselves.  Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." ' " (*People v. Houston* (2012) 54 Cal.4th 1186, 1215 (*Houston*).)  " 'We do not reweigh evidence or reevaluate a witness's credibility,' " and " 'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " (*Ibid.*)  " ' "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding.' " ' (*Ibid.*)

"The [substantial evidence] standard is deferential:  'When a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether, *on the entire record,* there is substantial evidence, contradicted or uncontradicted, which will support the determination.' " (*People v. Superior Court (Jones)* (1998) 18 Cal.4th 667, 681.)  An appellant challenging the sufficiency of the evidence under the foregoing standards "bears an enormous burden." (*People v. Sanchez* (2003) 113 Cal.App.4th 325, 330.)

## B.    *Substantial Evidence of Separate Acts for Counts 1 and 2*

The district attorney charged Boswell with two separate violations of section 288.7, subdivision (b), which makes it a felony for "[a]ny person 18 years of age or older [to] engage[] in oral copulation or sexual penetration . . . with a child who is 10 years of age or younger."  The People relied solely on oral copulation for both charges and, therefore, had to prove that Boswell engaged in oral copulation with Jane at least twice before she turned 11 years old.  As the trial court explained, this put the relevant timeframe as

6

between December 2016, when the family moved to California, and February 2018, just over a year later.

During closing argument, the prosecutor explained: "There's two charges per type of touching, first time and last time. Because if something happened more than once, there has to be a first time and there has to be a last time. So if you believe that something happened more than once, if you believe [Jane], the defendant's going to be guilty of the first time and the last time." And he explained further, with respect to counts 1 and 2 specifically, that they "refer to the defendant having [Jane] perform oral sex on him from the time they moved to California until the time she turned 11. If you believe her testimony that he had her do this more than once, he's guilty on both counts." The verdicts suggest that the jury did in fact believe Jane's testimony, as it found Boswell guilty on both counts. Substantial evidence supports the verdicts, including the requisite finding that Boswell engaged in oral copulation with Jane twice in California, before she turned 11.

At trial, the prosecutor set the timeframe by showing Jane and Mother two photographs; one of a daddy-daughter dance that occurred in February, 2017 when Jane was 10 years old, and another of Halloween, approximately 8 months later, before Jane turned 11. Mother explained that Jane was about to turn 10 when they moved to California, and that Jane had not yet turned 11 by the time the second photo was taken, around Halloween of that same year. Thus, the record is clear: Jane did not turn 11 until over a year after the family moved to California.

Jane testified that the abuse was happening in her home in California around the time she went to the daddy-daughter dance depicted in the first photo and around the time the Halloween photograph was taken. She specifically stated that Boswell made her put her mouth on his penis around

7

the time of the daddy-daughter dance and the Halloween photo, and that it happened more than once or twice. On cross-examination, Jane conceded that it was sometimes hard for her to pinpoint exactly where she was when certain things happened. However, both Jane and Sister testified that the abuse was continuous once it started and that there was never a long period where it did not occur.

On re-direct, the prosecutor asked Jane additional questions to clarify the timeline:

"Q: I just want to be clear without going through the specifics of each incident: From the time you moved to Oceanside around the time that daddy-daughter dance photo was taken, until the summer of 2019, did your dad, the defendant that you pointed out earlier, did he make you put your mouth on his penis more than once?

"A: Yes.

"Q: Did he make you do that more than once around the time frame of the daddy-daughter dance and the Halloween photo?

"A: Yes.

"Q: Did he make you do that more than once after the Halloween photo, as you got older?

"A: Yes."

Jane's testimony was evidence of "reasonable, credible and of solid value," and it was corroborated by other witnesses. (See *Houston, supra,* 54 Cal.4th at p. 1215.) Boswell asserts, to the contrary, Jane's testimony was vague and inconsistent. As defense counsel did at trial, he relies on her initial disclosures, including the forensic interview, in which Jane said that Boswell abused her in the summer of 2019. At trial, Jane explained that she had not told the forensic interviewer everything because she was not ready to

speak up yet and had been "thrown into the situation." That testimony was consistent with the explanation provided by Schultz—an expert in how children disclose sexual abuse—that children often begin by "test[ing] the waters," perhaps by telling only "a little bit . . . to kind of see what the response [is] going to be." It is evident from the verdict that the jury credited Jane's testimony, as they were entitled to do. " 'We do not reweigh evidence or reevaluate a witness's credibility' " on appeal. (*Houston, supra,* at p. 1215.)

The authority that Boswell relies on does not compel a different conclusion. In *People v. Mejia* (2007) 155 Cal.App.4th 86, the appellate court noted that "there was *no evidence* as to when defendant abused her in September, including whether the abuse occurred before and/or after her birthday." (*Id.* at p. 95, italics added.) Likewise, in *People v. Valenti* (2016) 243 Cal.App.4th 1140, the evidence was insufficient to establish that the abuse was continual, meaning that it lasted at least three months, where "the court's careful questioning of [the victim] elicited unequivocal testimony that the abuse *did not last for more than one month.*" (*Id.* at p. 1160, italics added.) To the contrary here, there was evidence in the form of testimony from Jane and Mother that Boswell made Jane put her mouth on his penis on more than one occasion around the time of two photos, taken approximately 8 months apart, well before Jane turned 11. Boswell provides no authority indicating that the prosecution was required to prove the exact date on which each incident occurred.

Based on the foregoing, we conclude there was substantial evidence to support the convictions on counts 1 and 2.

## C.    *Substantial Evidence of Duress*

In counts 3 through 10, the district attorney charged Boswell with violations of section 288, subdivision (b)(1). Section 288, subdivision (a) makes it a felony for any person to "willfully and lewdly commit[] any lewd or

9

lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child." Section 288, subdivision (b)(1) increases the penalty for the felony if the person "commits an act described in subdivision (a) by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person." The jury found Boswell guilty on all asserted counts. On appeal, Boswell contends that the prosecutor relied solely on duress—as opposed to force, violence, menace, or fear—to prove the additional requirement of subdivision (b)(1); that the jury's verdict was therefore based solely on duress; and that there was insufficient evidence to prove the asserted element of duress.

Even if we assume that the jury's finding was limited to duress,[4] there was sufficient evidence to support that finding. " ' "[D]uress as used in the context of section 288 [means] a *direct or implied threat of force, violence, danger, hardship or retribution* sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted." ' " (*People v. Garcia* (2016) 247 Cal.App.4th 1013, 1023 (*Garcia*), italics added.) The test is objective. (*People v. Soto* (2011) 51 Cal.4th 229, 246 (*Soto*).) The focus is on the perpetrator's actions, not the

_____

4    As Boswell points out, the verdict forms for all 8 counts stated that the jury found Boswell guilty "of the crime of Lewd or Lascivious Act with a Child Under 14 Years of Age *by Duress*." (Italics added.) However, we note that the trial court instructed the jury that for the prosecution to prove those counts, they had to prove, among other things, that "the defendant used force, violence, duress, menace, or fear of immediate and unlawful bodily injury to the child or someone else."

10

victim's response, and the trier of fact should consider all relevant circumstances, including the age of the victim and the victim's relationship to the abuser. (*Id.* at p. 246, fn. 9.)

In *Garcia,* the court found there was sufficient evidence of duress where the defendant told the victim, his daughter, that " 'he was going to do something to my mom [or my family] if I didn't let him do something to me.' " (*Garcia, supra,* 247 Cal.App.4th at p. 1024.) In addition, the defendant used direct force by grabbing or pushing different parts of the victim's body. (*Ibid.*) The evidence here was similar, and more than sufficient to establish that Boswell used direct and implied threats to coerce Jane to perform or submit to acts that she otherwise would not have. (See *id.* at p. 1023.) Moreover, even if the jury did not explicitly consider whether the abuse was committed by means of force, they could have nevertheless found that Boswell employed direct or implied *threats of force* in concluding that he committed the abuse by use of duress. (*Id.* at pp. 1023–1024.)

In the text exchanges with her friend from school, Jane said that Boswell "made it very clear not to tell anyone when I was little." During the forensic interview, she said, similarly, that Boswell told her not to tell anyone, that he would be in big trouble and that he would be taken away if she did. After disclosing the abuse, she said that she was nervous that her dad was going to get in trouble and that it was going to "be really awkward at home." In addition, Jane disclosed one instance, when the abuse first started, when Boswell told her that she could not go to a friend's house until she engaged in inappropriate acts with him. Although this incident occurred before the charged counts, it is relevant in establishing the overall circumstances and Boswell's continued use of implied and direct threats. (See, e.g., *Soto, supra,* 51 Cal.4th at p. 246.)

11

At trial, Jane testified that she told Boswell that she was uncomfortable with what was happening, and sometimes either verbally argued with him or pushed him away, but that did not stop him. In addition, Jane testified that Boswell told her the abuse was "normal" and that more parents should do those types of things with their children. She explained that she was scared to tell anyone what was happening because Boswell told her that he would go to jail and her mother would not be able to take care of her on her own. Later, Jane explained that she did not tell because she was trying to protect Boswell, "[b]ecause that's what [she] was trained to do as – growing up." And when she asked Boswell to stop tickling her or touching her face in public, she got in trouble for disrespecting him. Sister corroborated this testimony, and stated that she "was often told that if I did tell, my mother would get in trouble so she would have to go away."

Sister said that there were times when she left the room and Boswell did not pursue her further, but she also said that she still felt pressured to comply because if she did not, he would be "quite grumpy later that day." Contrary to Bowell's assertions, this testimony is not sufficient to undermine the substantial evidence of duress presented throughout the trial. (See *Houston, supra*, 54 Cal.4th at p. 1215 ["the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding"].) We do not reweigh the evidence on appeal. (*Ibid.*)

In addition, there was also evidence that Boswell used force in at least some instances. Jane testified that he would push her head down to make her touch his penis with her mouth. In addition, Jane described one incident where Boswell "grabbed [her] head" and continued to thrust his penis in her mouth until she threw up. Again, even if the jury did not convict Boswell based on the actual use of force, these instances could be considered as

12

further evidence of implied or explicit *threats* of force. If the girls did not comply on their own, Boswell would, at times, use force.

Boswell relies on a 2002 case from our sister court, *People v. Espinoza* (2002) 95 Cal.App.4th 1287, to assert that the evidence that he was Jane's father, that he was much older and bigger than Jane, and that Jane was scared to tell anyone was not sufficient to establish duress. Other cases have declined to follow that reasoning and have instead acknowledged that duress can involve psychological coercion, and that the familial relationship and relative ages of the victim and perpetrator are relevant factors to consider in proving duress. (See *People v. Veale* (2008) 160 Cal.App.4th 40, 49 [victim's fear that something would happen to her mother was sufficient to establish that father used duress]; *People v. Cochran* (2002) 103 Cal.App.4th 8, 16, fn. 6 (*Cochran*) [Although the parent/child relationship does not establish duress as a matter of law, "as a factual matter, when the victim is [young] and is molested by her father in the family home, in all but the rarest cases duress will be present."].)

In *Cochran*, much like the present case, the abuse began when the victim was in the fourth grade and the perpetrator, the victim's father, told her not to tell anyone because he would go to jail. (*Cochran, supra,* 103 Cal.App.4th at p. 12.) The court concluded that the child's reluctant participation in response to her father's parental authority constituted duress. (*Id.* at p. 15.) We find the reasoning in *Cochran*, and other similar cases, compelling, and decline to follow *Espinoza*.

Based on the foregoing, we conclude that there was substantial evidence to support the jury's verdicts on counts 3 through 10, including the requisite finding on the element of duress.

13

## II. Sister's Testimony Regarding Prior Uncharged Acts Was Admissible and Not Overly Prejudicial

Boswell next contends that the trial court abused its discretion under Evidence Code section 352 and violated his right to due process and a fair trial by allowing Sister to testify regarding prior uncharged acts, and specifically prior uncharged acts involving both her and Boswell's oldest daughter.

The trial court allowed the prosecution to introduce evidence of other uncharged sexual offenses perpetrated against Sister and Boswell's oldest daughter pursuant to Evidence Code section 1108, subdivision (a) which provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."

Boswell does not dispute that the evidence falls under Evidence Code section 1108; he asserts only that the trial court abused its discretion in determining it was not otherwise inadmissible as unduly prejudicial under Evidence Code section 352. (See *People v. Branch* (2001) 91 Cal.App.4th 274, 282 (*Branch*) ["We review a challenge to a trial court's choice to admit or exclude evidence under section 352 for abuse of discretion."].)

The trial court explained its reasoning under Evidence Code section 352 in detail, stating:

> "So turning to the 352 analysis, we look to how similar the conduct was. The greater the similarity, the greater the probative value. And here, the conduct is virtually, if not identical, and also included the daughters all being about the same age when it occurred, so it makes it highly probative.

> "Whether the prior conduct was unreported; in other words, not reported prior to the current allegations, and that is

14

correct. It wasn't reported until after [Jane] disclosed. That normally reduces the admissibility as it increases the uncertainty that it occurred or that it's being disclosed for some ulterior purpose. But here, the defendant admitted in the recorded conversations that it did occur.

"Regarding the recency, the conduct with [Sister] was within about four years of the conduct with [Jane], and [the oldest daughter] – the conduct with [the oldest daughter] was within about eight years of the conduct with [Jane]. That's not too remote or stale, especially considering the additional factor that it all occurred at around the same age for each of the daughters.

"Another factor is whether defendant was punished for the prior crimes, and no, these were previously unreported, and they can't be charged here as they occurred out of state.

"Another factor is the comparative offensiveness between the prior conduct and the currently charged conduct. And here it's all the same as the current allegations. It's not more inflammatory, nor is the evidence stronger in uncharged acts than the charged crimes.

"Another factor is whether or not the jury would be confused by – confuse the issues. But it seems clear that the jury should be able to differentiate the conduct that involved – has involved each different child. It's not going to take an undue consumption of time. The People have represented that it's going to be through the testimony of [Sister], and they're not going to go into the detail they are with [Jane], as well as testimony from [their mother] and [the detective] as to the defendant's admissions of conduct to them, which were recorded.

"So under Evidence Code Section 352, prejudice means evidence that tends to evoke an emotional bias against the defendant with very little effect on the issues, not evidence that is probative of defendant's guilt. Also, prejudice under 352 is not prejudice or damage that naturally flows from relevant, highly probative evidence; rather, it is prejudice

in the sense of prejudging a person or cause on the basis of extraneous factors.

"And here the evidence of the prior uncharged sexual offenses is highly probative of defendant's guilt, and it's not prejudging a person based on extraneous factors. So we would find it admissible under Section 1108 after the 352 analysis."

We decipher no abuse of discretion from this detailed analysis of the relevant factors under Evidence Code section 352. (See, e.g., *People v. Loy* (2011) 52 Cal.4th 46, 61 [courts should consider such factors as the remoteness of the evidence; the degree of certainty of its commission; the likelihood of confusing, misleading, or distracting the jurors from their main inquiry; the similarity of the uncharged acts to the charged offenses; the likely prejudicial impact of the evidence on the jurors; the additional burden of defending against the uncharged offense; and less prejudicial alternatives such as exclusion of inflammatory details].)

Boswell argues, without any supporting authority, that the evidence was of minimal probative value because it was cumulative in nature, and because Jane did not know about the prior acts. But as the trial court explained, the fact that the pattern of abuse, and the specific physical acts, were so similar is precisely what makes the evidence probative. (See *People v. Hernandez* (2011) 200 Cal.App.4th 953, 966 ["uncharged prior offenses that are very similar in nature to the charged crime logically will have more probative value in proving propensity to commit the charged offense"]; *People v. Johnson* (2010) 185 Cal.App.4th 520, 532 ["similar prior offenses are 'uniquely probative' of guilt in a later accusation"].) Moreover, that Jane disclosed similar abuse, including to her friend and in the forensic interview, without any knowledge of the prior abuse of Sister, and Boswell's oldest daughter, only serves to make the evidence that much more probative.

Boswell also contends the evidence was unduly prejudicial. As an initial matter, where, as here, the prior uncharged acts that are "very similar" to the charged acts, the evidence is less likely to be inflammatory in nature. (*Branch, supra,* 91 Cal.App.4th at pp. 283–284.) Here, the abuse described by both girls was extremely similar. With the minor exception of the instance in which Boswell made Sister vomit (which he admitted to on more than one occasion), the instances Sister described were no more inflammatory than those described by Jane. Bowell argues that the evidence was nevertheless unduly prejudicial because of the risk that the jury would be tempted to punish Boswell for the uncharged acts. As the trial court noted, though, the charges stemmed solely from abuse involving Jane after the family moved to California, and thus the jury would readily be able to differentiate the conduct at issue from that which was directed towards Sister and Boswell's oldest daughter, years earlier, in other states.

Finally, Boswell argues, once again, that Jane's testimony was vague as to the individual charged acts and, therefore, the jury was even more likely to convict him based on Sister's testimony regarding prior acts. We reject this argument for the same reasons discussed *ante.* Moreover, as we have also discussed, rather than encourage the jury to convict Boswell based on the uncharged offenses, Sister's testimony corroborated Jane's testimony that the *charged offenses* committed against her occurred on multiple occasions. The trial court also gave the jury a limiting instruction, and expressly stated that the evidence of uncharged acts was "not sufficient by itself to prove the defendant is guilty of the offenses charged in this case." We presume the jury understood and followed the court's instructions. (See *People v. Phillips* (2022) 75 Cal.App.5th 643, 692; *People v. Martinez* (2010)

17

47 Cal.4th 911, 957 (*Martinez*).) Notably, the jury asked to review the testimony of Jane during their deliberations, and not that of Sister.

Based on the foregoing, we conclude that the trial court did not abuse its discretion by permitting testimony and evidence of prior uncharged acts of abuse against his two older daughters.

### III. The Trial Court Correctly Instructed the Jury Regarding the Expert Testimony

The People presented testimony from Christine Schultz regarding the way in which children typically disclose sexual abuse.[5] Evidence of this nature is admissible " 'for the limited purpose of disabusing a jury of misconceptions it might hold about how a child reacts to a molestation.' " (*People v. Wells* (2004) 118 Cal.App.4th 179, 188.) However, it "may not be used to corroborate the victim's claims of abuse." (*People v. Housley* (1992) 6 Cal.App.4th 947, 957.)

Boswell does not dispute the admissibility of Schultz's testimony but contends that the trial court erred in instructing the jury with CALCRIM No. 1193 both before her testimony and at the conclusion of evidence.[6]

---

[5] As written, CALCRIM No. 1193 refers to Child Sexual Abuse Accommodation Syndrome, commonly referred to CSAAS. Likewise, prior courts have frequently referred to CSAAS when discussing this type of expert testimony. As here, courts have begun omitting the phrase "accommodation syndrome" and referring simply to child sexual abuse. Likewise, Schultz did not use the words CSAAS or "accommodation syndrome" while testifying in this case.

[6] Boswell concedes that he did not object to the instruction at trial but asserts the error is nevertheless cognizable on appeal and that his attorney provided ineffective assistance of counsel by failing to object. In light of these arguments, we exercise our discretion to address the merits of the alleged instructional error. (See *People v. Jimenez* (2021) 73 Cal.App.5th 862, 874.)

The trial court told the jury:

> "[You are] going to be hearing testimony from Ms. Schultz about child sexual abuse. Her testimony about child sexual abuse is not evidence that the defendant committed any of the crimes charged against him or any other conduct or crimes with which he was not charged but you've heard about in evidence.
>
> "You may consider this evidence only in deciding whether or not [Jane]'s conduct was not inconsistent with the conduct of someone who has been molested and in evaluating the believability of her testimony. So this testimony is for that limited purpose."

Boswell asserts that the instruction was confusing and argumentative, and actually suggested that the jury could use Schultz's testimony to determine whether Jane's claims were true. As Boswell recognizes, similar arguments have been rejected by California courts. (See *People v. Munch* (2020) 52 Cal.App.5th 464, 468 (*Munch*); *People v. Gonzales* (2017) 16 Cal.App.5th 494, 504; *People v. Lapenias* (2021) 67 Cal.App.5th 162, 176.)

In *Munch*, the appellant similarly asserted that "instructing jurors that they may use [expert testimony regarding the reporting of child sex abuse] 'in evaluating the believability' of the child's testimony means they will improperly use it to find the defendant is guilty." (*Munch, supra,* 52 Cal.App.5th at p. 474.) The appellate court rejected the argument and explained: " 'The purpose of [testimony regarding the ways in which children generally disclose sexual abuse] is to understand a child's reactions when they have been abused. [¶] A reasonable juror would understand CALCRIM No. 1193 to mean that the jury can use [the expert's] testimony to conclude that [the child's] behavior does not mean she lied when she said she was abused. The jury also would understand it cannot use [the expert's] testimony to conclude [the child] was, in fact, molested. The [] evidence

19

simply neutralizes the victim's apparently self-impeaching behavior. Thus, under CALCRIM No. 1193, a juror who believes [the expert's] testimony will find both that [the child's] apparently self-impeaching behavior does not affect her believability one way or the other, and that the [] evidence does not show she had been molested. There is no conflict in the instruction.' " (*Ibid*, italics omitted.) We agree with that analysis, and likewise conclude the language of CALCRIM No. 1193 does not misstate the law.

Boswell asserts, to the contrary, that the use of the double negative "not inconsistent" renders the instruction confusing. We disagree. We consider the instruction in the context of the entire record, including Schultz's testimony, and presume the jury understood and followed the instruction. (See *People v. Foster* (2010) 50 Cal.4th 1301, 1335 [" 'It is well established that [a jury] instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole *and the trial record.*' "]; *Martinez, supra,* 47 Cal.4th at p. 957.)

Here, the trial court explicitly told the jury that Schultz's testimony was not evidence Boswell committed any crime. The court then explained that the jury *could* consider the evidence to determine whether Jane was believable, and, specifically, whether their conduct was "not inconsistent with" someone who had been molested. Schultz then testified consistent with the court's instruction. She began by explaining the process of a forensic interview, and then discussed the different ways in which a child may make an initial disclosure of abuse. She did not discuss the details of the case or mention Boswell, Jane, or Boswell's other daughters. On this record, we conclude that the limiting instruction the trial court gave was both comprehensible and consistent with the law, and that Schultz's testimony

20

was consistent with that instruction.  (See *Munch, supra,* 52 Cal.App.5th at p. 474.)

Regardless, any error was harmless, even under the more stringent federal *Chapman* standard.  (*Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*) [holding that errors that violate a defendant's federal constitutional rights are harmless if the court concludes beyond a reasonable doubt that the verdict would have been the same absent the error].)  Boswell admitted, both in a pretext call and during a postarrest interrogation, that he committed lewd acts with all three of his daughters and, specifically, that he had Jane perform oral sex on him at least twice while they were living in California.  The contested issues centered primarily around how frequently the abuse occurred, and whether there were at least two instances of oral copulation after the move to California and before Jane turned 11.  As we have already explained, the testimony of Jane, Sister, and Mother was more than sufficient to support each of the asserted counts.  Both children testified that the abuse happened regularly, and Jane confirmed that it started for her before the family moved to California, that it continued in California and occurred around the time of the daddy-daughter dance and that Halloween, and that there was never an extended break where Boswell was not abusing her.

Even setting the instruction aside, there was nothing in Schultz's testimony or the prosecutor's arguments pertaining to that testimony that would have led the jury to rely on the testimony in assessing guilt.  Schultz gave generic testimony about how forensic interviews are typically conducted, and how children generally disclose abuse.  As noted, she did not discuss Jane or any other member of the family at all, nor did she provide any hypotheticals or specific paralleling to the case at hand.  The prosecutor then

21

relied primarily on Jane's testimony and the video of her forensic interview during closing arguments. Before speaking about Schultz's testimony, he reminded the jury that the court had provided a limiting instruction as to the use of that testimony, that Schultz did not look at any reports in the case, and that her testimony could not be used as evidence of guilt. He then discussed the testimony consistent with the law and the instruction, to assert that Jane's form of disclosure—delayed and initially incomplete—was both typical and reasonable for a child in her situation.

Based on the foregoing, we conclude any alleged error in the instruction on sexual abuse testimony was harmless beyond a reasonable doubt.

## IV. The Trial Court Did Not Err in Sentencing

Boswell's final assertions is that the trial court erred by imposing full consecutive terms on each of counts 5 through 10. Each of those counts alleged independent acts of lewd and lascivious acts involving Jane. Counts 5 and 6 alleged a first and last instance of mouth to penis contact between February 2018 and August 2019; Counts 7 and 8 alleged a first and last instance of finger to vagina contact between December 2016 and August 2019; and counts 7 and 8 alleged a first and last instance of hand to penis contact between December 2016 and August 2019.[7]

Section 667.6 discusses sentencing for multiple instances of certain sexually based offenses, including lewd or lascivious acts in violation of section 288, subdivision (b). (§ 667.6, subd. (e)(5).) Section 667.6, subdivision (c) provides that "a full, separate, and consecutive term *may* be imposed for each violation of an offense specified in subdivision (e) if the crimes involve

[7] The date range on counts 5 and 6 was shorter than the remaining counts, due to the additional charges in counts 1 through 4, related to similar conduct when Jane was 10 years of age or younger.

22

the same victim on the same occasion," and section 667.6, subdivision (d)(1) provides further that a "[f]ull, separate, and consecutive term *shall* be imposed for each violation of an offense specified in subdivision (e) if the crimes involve separate victims or involve the same victim on separate occasions." (Italics added.)

The trial court found that "Count 5 occurred on a separate day than either Counts 1 or 2," that it was not "one period of aberrant behavior," and that "the evidence showed that the defendant is a sexual serial abuser of . . . all of his daughters." The court then found that "Counts 5 and 6, although committed against the same victim, were committed on different days based on the evidence at trial" and therefore sentenced Boswell to a full consecutive term on each of counts 5 and 6 pursuant to section 667.6, subdivision (d).

As to count 7, the court found that it involved a different type of abuse and thus, even if it occurred on the same day as counts 5 and 6, "the objectives were predominantly independent as each different sexual act was a different and distinct sexual gratification of the defendant." After reiterating that Boswell was a serial abuser of his minor daughters, the court stated that it could not affirmatively determine whether count 7 occurred on a different day than counts 5 and 6, and therefore exercised its discretion to impose a full consecutive term under section 667.6, subdivision (c). The court applied a similar analysis to counts 8, 9, and 10, sentencing Boswell to a full consecutive term for each under section 667.6, subdivision (c).

Boswell asserts that the evidence was insufficient to support the trial court's findings as to each count. In reviewing that claim, we apply the same deferential substantial evidence standard of review as we did in connection with the convictions themselves. (See *People v. Baker* (2005) 126 Cal.App.4th

463, 468–469.) We do so while keeping in mind that the burden of proof for the trial court's finding that at least counts 5 and 6 occurred on separate occasions than counts 1 and 2, and each other, is by a preponderance of the evidence. (*People v. Groves* (2003) 107 Cal.App.4th 1227, 1230-1232.) Again, we have no trouble concluding there is substantial evidence to support the trial court's findings under section 667.6.

Boswell admitted that there were two separate instances of oral copulation around a week apart when Jane was approximately 11 years old. That admission on its own is sufficient to support the trial court's findings as to counts 5 and 6. In addition, as we have explained, there was substantial evidence to support the jury's finding that there were also at least two separate instances of oral copulation before Jane turned 11. Moreover, both girls testified that once the abuse began, it continued without any extended breaks. Thus, there was at least an inference from the evidence that although there were instances when multiple types of abuse occurred on the same date, there were also multiple, separate instances of each type of abuse.

Regardless, exercising extreme caution, the trial court elected to impose the remaining consecutive sentences, for counts 7, 8, 9, and 10, under section 667.6, subdivision (c), which allows for consecutive terms even if the offenses occurred on the same occasion. Boswell does not take issue with the court's underlying finding that "the objectives were predominantly independent as each different sexual act was a different and distinct sexual gratification of the defendant." (See, e.g., *People v. Latimer* (1993) 5 Cal.4th 1203, 1211 ["A person who commits separate, factually distinct, crimes . . . is more culpable than the person who commits only one crime].) Rather, he argues that in order to exercise its discretion under that subdivision, the trial

24

court had to affirmatively find that the offenses did in fact occur on the same occasion. We are not persuaded.

" 'Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose.' " (*People v. Gonzalez* (2008) 43 Cal.4th 1118, 1125.) " 'The statute's plain meaning controls the court's interpretation unless its words are ambiguous.' " (*Id*. at p. 1126.) However, when interpreting the plain meaning of a statute, " ' "Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute . . . ; and if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed." ' " (*Ibid*.)

A plain reading of section 667.6, subdivisions (c) and (d)(1) demonstrate that the Legislature intended to mandate consecutive sentences for offenses involving the same victim on separate occasions, and to permit consecutive sentences for offenses involving the same victim but not on a separate occasion. If the mandatory provision of section 667.6, subdivision (d)(1) does not apply, then the court necessarily retains discretion to impose a consecutive sentence under subdivision (c). There is no logical reason to presume the Legislature intended to create a loophole whereby a defendant could avoid a consecutive sentence by simply claiming there was some uncertainty as to whether the offenses occurred on the same or separate occasions, despite the trial court exercising its discretion under the more lenient provision.

As a final matter, Boswell argued in his opening brief that the mandatory imposition of full, consecutive sentences based on a judicial finding that the acts occurred on separate occasions violates the Sixth Amendment right to trial by jury. However, as Boswell subsequently

25

concedes, our high court decided this issue while the present appeal was pending and concluded that the Sixth Amendment right to have certain facts found by a jury does not apply to a trial judge's findings of facts necessary to impose a consecutive term under section 667.6.  (See *People v. Catarino* (2023) 14 Cal.5th 748, 755−757.)  We are bound by our high court's decision.

Accordingly, we conclude that the trial court did not err by imposing full consecutive terms on counts 5 through 10.

### DISPOSITION

The judgment is affirmed.

KELETY, J.

WE CONCUR:


HUFFMAN, Acting P. J.


CASTILLO, J.

26