Opinion
MIHARA, J.
Defendant Vicente Ruiz Garcia was convicted by jury trial of 16 counts of forcible lewd acts on a child (Pen. Code, § 288, subd. (b))[1] and sentenced to 86 years in state prison. On appeal, he claims that (1) the convictions are not supported by substantial evidence because the evidence at *1016 trial did not link each act of abuse to a particular one of the specific one-year periods alleged in the second amended information, (2) there is not substantial evidence of force or duress, (3) the trial court prejudicially erred in denying his motion to suppress his statements to the police, (4) the trial court prejudicially erred in admitting expert testimony about child sexual abuse accommodation syndrome (CSAAS), and (5) there are clerical errors in the abstract of judgment and minutes that must be corrected.
The Attorney General concedes that the errors in the abstract and minutes must be corrected, and we agree. In the published portion of this opinion, we conclude that it was not necessary for the prosecution to prove that specific charged acts occurred during each of the one-year periods alleged in the information since the information alleged only that the acts occurred “on or about” each of those periods. In the unpublished portions of the opinion, we reject the remainder of defendant’s contentions. Consequently, we affirm the judgment and order the abstract and minutes corrected.
I. Factual Background
In 2012, Jane Doe told her mother that defendant, her father, had sexually abused her, and her mother confronted defendant. Defendant admitted the abuse and told Jane’s mother that “he needed help and he didn’t know why he had done it . . . .” The abuse stopped.
On May 8, 2013, Jane’s mother called 911 after defendant became “very drunk and he got very aggressive.” A deputy from the San Benito County Sheriff’s Office responded to the “domestic disturbance” call. The deputy spoke with Jane, and she told him that defendant had touched her private parts from the time she was five years old until she was 10 years old. The deputy contacted San Benito County child protective services (CPS). After speaking with Jane, the CPS worker removed her from the home and contacted the Watsonville police, as the touchings had not occurred in San Benito County.
On May 10, 2013, two Watsonville police officers went to the San Benito County CPS offices and met with defendant there. While they were meeting with defendant, another police officer was interviewing Jane, who had been brought by CPS to the police department in Watsonville. Defendant admitted that he had sexually abused Jane, and Jane provided details of the abuse to the police. Although defendant admitted to just a few incidents of nonforcible abuse and insisted that they occurred in a single one-year period in Chow-chilla, Jane told the police about years of forcible abuse that began in Mexico when she was five years old and continued in Chowchilla and Watsonville until she was 10 years old. Defendant was arrested at the end of his police interview.
*1017 II. Procedural Background
The second amended information charged defendant with 16 counts. Four counts were charged for each one-year period beginning with September 2007 through September 2008 and ending with September 2010 through September 2011. The jury returned guilty verdicts on all 16 counts, and the court committed defendant to state prison for a term of 86 years. Defendant timely filed a notice of appeal.
III. Discussion
A. Sufficiency of the Evidence
Defendant contends that there is not substantial evidence in the record to support the 16 counts on which he was convicted. He also contends that there was insufficient evidence of force or duress.
1. Jane’s Police Interview
Jane told the police that defendant had begun touching her vagina when she was five years old and they were living in Mexico.[2] There were a couple of touchings in Mexico.[3] After the family moved to Chowchilla, defendant continued to abuse her, and there were a lot of incidents of abuse in Chowchilla. While they were in Chowchilla, defendant touched her vagina and showed her his penis. He perpetrated the abuse when her mother was cooking, taking a shower, or washing clothes.
The family moved to Watsonville while Jane was in second grade, and the abuse got worse and continued when she was in third grade and fourth grade. The abuse was frequent in Watsonville; it happened almost every time her mother took a shower. Her mother took a shower every couple of days. Jane estimated that the abuse happened about 200 times in Watsonville when she was in second, third, and fourth grades. Defendant would not only touch her private parts, but he would also grab her hand and “make” her touch his penis when they were in the car together. Three times he forced her to touch his penis by grabbing her hand and putting it on his penis. It was in Watsonville that he began putting his penis on her vagina. He would pull her pants down, push her onto a bed or the floor, pull his pants down, get on top of her, and put his penis on her vagina.
During these incidents of abuse, defendant would grab Jane’s hands really hard so that she would not move; this hurt her. A couple of times he covered *1018 her mouth so that she could not scream. He also told her not to scream or he would do something to her mother, and he threatened to hurt her mother if she did not permit him to abuse her.
In 2012, when Jane was 10 years old, she told her mother about defendant’s abuse. Jane’s mother confronted defendant, and he admitted the abuse. He stopped abusing Jane.
2. Jane’s Trial Testimony
Jane was a very reluctant witness at trial. Asked whether defendant had abused her in Mexico, she said, “I don’t want to talk about it.” Jane explained that she thought defendant ‘“is a good dad,” and ‘“I don’t want him to be in jail . . . .” Nevertheless, she confirmed that she had told the truth to the police during her May 2013 interview and during a subsequent interview a couple of months later. Jane intermittently exhibited reluctance to testify about the abuse: ‘“I don’t want to talk no more.”
Jane testified at trial that she came to the United States and moved to Chowchilla when she was six years old. The family subsequently moved to Watsonville. Jane confirmed that defendant had touched her vagina, displayed his penis to her, put his penis on her vagina, and forced her to touch his penis. She recalled one or two incidents in Watsonville where defendant forced her to touch his penis in the car. Jane recounted that the touchings occurred both lying down and standing up. Jane could not remember how many times defendant abused her in Chowchilla. She did remember that the abuse in Chowchilla occurred when her mother was cooking or in the bathroom. Once, she could not remember at what location, defendant touched her chest.
Although she said she did not remember how many times defendant had touched her, she recalled telling the police that it was about 200 times. However, she testified that she now thought that ‘“it wasn’t that much.” Jane remembered telling the police that the abuse had begun in Mexico when she was five years old, but on cross-examination she said that the event in Mexico was just defendant trying to touch her, “but I didn’t let him
Jane confirmed that in Watsonville defendant would “grab my hands really hard so I couldn’t move” or “get away.” This “hurt.” Sometimes he would lie on top of her and cover her mouth so that she could not scream. He told her not to tell anyone about the abuse. However, Jane testified that defendant had never told her that he was going to do something to her mother.
On cross-examination, Jane testified that there were just three instances of abuse in Chowchilla, and defendant did not hold her down or threaten her *1019 when he abused her in Chowchilla. However, she also testified that he would “grab my hand” in Chowchilla. She reiterated that he had held her down when he abused her in Watsonville. She also testified on cross-examination that there were at least five instances of abuse in Watsonville. But she testified both that he held her down every time and that he held her down just once or twice and did not threaten her.
3.Defendant’s Admissions
During his police interview, defendant admitted that he had sexually abused Jane five times in Chowchilla and two or three times in Watsonville. In Chowchilla, Jane had touched his erect penis once while her mother was in the shower; twice he had touched her vagina with his hand; and twice he had placed his penis over her vagina. In Watsonville, defendant two or three times put his penis on Jane’s vagina while her mother was in the shower.
4.Standard of Review
Our standard of review is well established. “ ‘[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.’ ” (People v. Johnson (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738], quoting Jackson v. Virginia (1979) 443 U.S. 307, 318-319 [61 L.Ed.2d 560, 99 S.Ct. 2781].) “[The] appellate court must view the evidence in the light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.” (People v. Reilly (1970) 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475 P.2d 649]; accord, People v. Pensinger (1991) 52 Cal.3d 1210, 1237 [278 Cal.Rptr. 640, 805 P.2d 899].) “Evidence is sufficient to support a conviction only if it is substantial, that is, if it ‘ “reasonably inspires confidence” ’ [citation], and is ‘credible and of solid value.’ ” (People v. Raley (1992) 2 Cal.4th 870, 891 [8 Cal.Rptr.2d 678, 830 P.2d 712].)
5. Time Periods
Defendant claims that his convictions are not supported by substantial evidence because “it is virtually impossible to determine which of the alleged acts he committed” “during each one year period.” He asserts that the evidence presented at trial did not satisfy the requirements of People v. Jones (1990) 51 Cal.3d 294 [270 Cal.Rptr. 611, 792 P.2d 643] (Jones).
In Jones, the six counts at issue each charged one event in a different two-month period. (Jones, supra, 51 Cal.3d at p. 303.) The victim of these *1020 counts testified that the abuse occurred once or twice a month during the charged periods. (Jones, at p. 301.) The California Supreme Court held that the victim’s generic testimony constituted substantial evidence supporting these six convictions. ‘“[I]n determining the sufficiency of generic testimony, we must focus on factors other than the youth of the victim/witness. Does the victim’s failure to specify precise date, time, place or circumstance render generic testimony insufficient? Clearly not. As many of the cases make clear, the particular details surrounding a child molestation charge are not elements of the offense and are unnecessary to sustain a conviction. [Citations.] [¶] The victim, of course, must describe the kind of act or acts committed with sufficient specificity, both to assure that unlawful conduct indeed has occurred and to differentiate between the various types of proscribed conduct (e.g., lewd conduct, intercourse, oral copulation or sodomy). Moreover, the victim must describe the number of acts committed with sufficient certainty to support each of the counts alleged in the information or indictment (e.g., ‘twice a month’ or ‘every time we went camping’). Finally, the victim must be able to describe the general time period in which these acts occurred (e.g., ‘the summer before my fourth grade,’ or ‘during each Sunday morning after he came to live with us’), to assure the acts were committed within the applicable limitation period. Additional details regarding the time, place or circumstance of the various assaults may assist in assessing the credibility or substantiality of the victim’s testimony, but are not essential to sustain a conviction.” (Jones, at pp. 315-316.)
The Jones court also separately addressed whether the victim’s generic testimony violated the defendant’s due process rights. (Jones, supra, 51 Cal.3d at p. 316.) First, it held that reliance on generic evidence did not violate a defendant’s due process right to notice. ‘“We conclude that, given the availability of the preliminary hearing, demurrer and pretrial discovery procedures, the prosecution of child molestation charges based on generic testimony does not, of itself, result in a denial of a defendant’s due process right to fair notice of the charges against him.” (Jones, at p. 318.) Second, the court concluded that reliance on generic testimony did not deprive a defendant of his or her due process right to present a defense. (Jones, at pp. 319-320.) Finally, the court held that a defendant’s right to a unanimous verdict was ensured by unanimity instructions. (Jones, at p. 321.)
Defendant contends that the evidence presented at trial was insufficient to support his convictions on the first eight counts because the evidence did not link the acts of abuse to the time periods alleged in the second amended information for those counts. The second amended information, which was the operative pleading at trial, alleged that each set of four counts occurred ‘“[o]n or about or between” a one-year period corresponding to Jane’s ages of six, seven, eight, and nine. The first four counts were alleged to have occurred when Jane was six years old, and the second four counts were *1021 alleged to have occurred when Jane was seven years old. Jane testified at trial that she was born in September 2001. Jane and her mother both testified at trial that the family moved to Chowchilla from Mexico when Jane was six years old. In defendant’s statement to the police, which was admitted into evidence at trial, he told the police that the family moved to Chowchilla when Jane’s younger sister was seven months old. Jane’s mother testified that Jane’s younger sister was born in late July 2007. Hence, they moved to Chowchilla in February or March 2008, when Jane was six and a half years old. Jane testified that she was six or seven years old when they lived in Chowchilla, and her mother testified that the family lived in Chowchilla for ‘“[m]ore than a year and a half.”[4] This evidence established that Jane lived in Chowchilla for all or nearly all of the year when she was seven years old.
The first four counts charged a period that included only approximately the first seven months of the ‘“[m]ore than a year and a half’ that the family lived in Chowchilla. The second four counts charged a period during which the family lived primarily in Chowchilla, but possibly lived in Watsonville toward the end of the period. As a result, the Chowchilla events of abuse were spread over the time periods charged in both the first and second sets of four counts. No evidence was presented by the prosecution distinguishing between events of abuse during the one-year period when Jane was six years old and living in Chowchilla (Sept. 2007 to Sept. 2008) and events of abuse during the one-year period when Jane was seven years old and still living in Chowchilla (after Sept. 2008). The only evidence of the total number of events of abuse that occurred while they lived in Chowchilla was Jane’s statement to the police that there were ‘“a lot” of incidents of abuse in Chowchilla and defendant’s admission that there were five events of abuse in Chowchilla. Neither Jane’s statement nor defendant’s admission distinguished between the two periods of time. Jane also did not give any statements or testimony about the frequency of the abuse in Chowchilla.
Defendant argues that reversal of these eight counts is required due to insufficiency of the evidence because the evidence did not permit a determination of ‘“how many acts occurred during each one year period.” The Attorney General contends that it was not necessary for the prosecution to present evidence that the number of acts charged during a specific one-year time period actually occurred during that one-year time period. She contends that the prosecution was required to show only that all of the acts occurred during the applicable limitations period. In her view, the prosecution’s failure to show that four acts occurred while Jane was six years old and four acts *1022 occurred while Jane was seven years old, as charged in the second amended information, was merely a “variance between the pleading and the proof’ that defendant forfeited by failing to object on that basis below and that would not in any event establish insufficiency of the evidence.
Defendant did not forfeit this contention. He demurred on due process grounds to the first amended information’s use of one-year periods without otherwise distinguishing between the counts. The prosecution responded that it was enough for the information to allege that the offenses occurred during the applicable limitations period. His demurrer was overruled. Defendant also filed a section 995 motion challenging the sufficiency of the evidence presented at the preliminary examination to support the first eight counts. He claimed that the evidence was insufficient to show that four counts occurred when Jane was six years old or that four counts occurred when she was seven years old. His motion was denied. Since defendant demurred on this ground and brought a section 995 motion on this ground, we cannot credit the Attorney General’s suggestion that defendant’s contention was not “preserved” because he failed to bring it up below.
Defendant claims that the evidence is insufficient to support the first eight counts because no evidence linked particular acts of abuse to those specific one-year periods. Such evidence was not required. “The precise time at which the offense was committed need not be stated in the accusatory pleading, but it may be alleged to have been committed at any time before the finding or filing thereof, except where the time is a material ingredient in the offense.” (§ 955.) “The law is clear that, when it is charged that an offense was committed ‘on or about’ a named date, the exact date need not be proved unless the time ‘is a material ingredient in the offense’ (Pen. Code, § 955), and the evidence is not insufficient merely because it shows that the offense was committed on another date.” (People v. Starkey (1965) 234 Cal.App.2d 822, 827 [44 Cal.Rptr. 738]; accord, People v. Peyton (2009) 176 Cal.App.4th 642, 660 [98 Cal.Rptr.3d 243].) Time was not a “material ingredient” (§ 955) in any of the offenses. And Jones says nothing inconsistent with these principles.
The premise for defendant’s contention is nothing more than a pleading error. The second amended information alleged the counts by reference to one-year periods corresponding to Jane’s age at the time of the events, but the evidence at trial did not distinguish between the acts of abuse by reference to one-year periods or to Jane’s age at the time of the events. The evidence at trial distinguished between the events only by reference to whether they occurred in Chowchilla or in Watsonville. This pleading error did not render the evidence insufficient because the second amended information used “on or about” in reference to these one-year periods, making it unnecessary to *1023 establish when the offenses actually occurred. The jury was not obligated to match the counts to one-year periods. Indeed, it was instructed that ‘“[t]he People are not required to prove that the crime took place exactly on that day but only that it happened reasonably close to that day.” The jury was also given a proper unanimity instruction that permitted it to convict defendant of all of the charged counts if ”[y]ou all agree that the People have proved that the defendant committed all the acts alleged to have occurred during this time period and have proved that the defendant committed at least the number of offenses charged.”[5] The evidence at trial established that there were far more than 16 events of abuse that occurred during the four-year period encompassed by the counts charged in the information.[6] Since the jury could have concluded that defendant committed all of the acts Jane described, which was far more than 16, and reached a unanimous verdict on that basis, the incongruence between the dates alleged in the second amended information and the evidence produced at trial was immaterial.[7]
6. Force and Duress
Defendant also challenges the sufficiency of the evidence to show that he used force or duress to perpetrate the abuse.
” ‘[Djuress as used in the context of section 288 [means] a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted.’ ” (People v. Leal (2004) 33 Cal.4th 999, 1004 [16 Cal.Rptr.3d 869, 94 P.3d 1071].)
*1024 “A defendant uses ‘force’ if the prohibited act is facilitated by the defendant’s use of physical violence, compulsion or constraint against the victim other than, or in addition to, the physical contact which is inherent in the prohibited act.” (People v. Bolander (1994) 23 Cal.App.4th 155, 163 [28 Cal.Rptr.2d 365] (cone. opn. of Mihara, J.) (Bolander); accord, People v. Soto (2011) 51 Cal.4th 229, 242 [119 Cal.Rptr.3d 775, 245 P.3d 410].) “[A]n act is forcible if force facilitated the act rather than being merely incidental to the act.” (Bolander, at pp. 164-165.) “[A]cts of grabbing, holding and restraining that occur in conjunction with the lewd acts themselves” are sufficient to support a finding that the lewd act was committed by means of force. (People v. Alvarez (2009) 178 Cal.App.4th 999, 1005 [101 Cal.Rptr.3d 169].)
Defendant used duress by means of threats to facilitate his abuse of Jane. During the earliest acts of abuse in Mexico, when Jane was five years old, defendant ‘“would always tell me that he was gonna do something to my mom if I didn’t let him do something to me.” This threat made Jane ‘“scared,” and she had dreams about defendant “killing my mom.” Defendant continued to make similar threats. He warned her not to scream or he would “do somethin’ to my mom.” Because of these threats, Jane “let him do whatever he wanted to because I was really nervous he was gonna do something to my mom.” Jane’s decision to disclose the abuse came about because she “got tired of my dad telling me that he was gonna do something to my family.” Defendant also repeatedly used force to perpetrate much of his abuse of Jane. He grabbed her hands so hard that it hurt in order to keep her from moving while he touched her vagina. He forced her to touch his penis by grabbing her hand and placing it on his penis. Defendant was able to place his penis on Jane’s vagina only because he had “push[ed]” Jane down on the floor and gotten on top of her. Although Jane attempted to push him off of her, she was unsuccessful because he “wouldn’t get up.” Defendant also covered her mouth to keep her from screaming.
Defendant’s threats to harm Jane’s mother were plainly sufficient to cause a reasonable person to permit acts of abuse that she would not otherwise have permitted. After defendant had repeatedly threatened to harm Jane’s mother, all of his subsequent acts of abuse were facilitated by the duress engendered by these threats. The fact that he also grabbed, held, and restrained Jane during many of the acts of abuse further supported the jury’s verdicts. In light of the many acts that occurred in Watsonville and the jury’s implicit finding that all of the acts alleged occurred, it is irrelevant whether all of the Chowchilla acts were committed by force or duress. Substantial evidence supports the jury’s findings that defendant’s acts of abuse came within the provisions of section 288, subdivision (b)(1).
*1025 B.-D.*

IV. Disposition
The judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment and minutes reflecting that the eight-year terms imposed for counts 13 through 16 were midterms rather than upper terms and to forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.
Bamattre-Manoukian, Acting P. J., concurred.

 Subsequent statutory references are to the Penal Code unless otherwise specified.

 Videos of Jane’s police interviews were played for the jury at trial.

 The touchings in Mexico were not charged in this case.

 Jane told the police that she was in first grade when they lived in Chowchilla and that she moved to Watsonville while she was in second grade. She also told the police that she went to second, third, and fourth grades in Watsonville. Jane testified that she was 12 years old and in the sixth grade at the time of the January 2014 trial.

 The jury was instructed as follows on unanimity: “The defendant is charged with committing lewd acts on a child by force/violence/fear/duress in Counts 1-16 sometime during the periods of September 28, 2007 to September 27, 2011. [¶] September 28, 2007 and September 27, 2008 = Counts 1-4 [¶] September 28, 2008 and September 27, 2009 = Counts 5-8 [¶] September 28, 2009 and September 27, 2010 = Counts 9-12 [¶] September 28, 2010 and September 27, 2011 = Counts 13-16 [¶] The People have presented evidence of more than one act to prove that the defendant committed these offenses. You must not find the defendant guilty unless: [¶] You all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act he committed for each offense; [¶] OR [¶] You all agree that the People have proved that the defendant committed all the acts alleged to have occurred during this time period and have proved that the defendant committed at least the number of offenses charged.”

 Jane told the police that the abuse occurred approximately every couple of days during the years they lived in Watsonville until she disclosed the abuse to her mother when she was 10 years old.

 Defendant claims that the evidence is insufficient to support the other eight counts for the same reason: the evidence presented at trial did not distinguish between the two one-year periods with respect to the acts of abuse that occurred in Watsonville. This claim fails for the same reason that the claim as to the first eight counts fails.

 See footnote, ante, page 1013.