Filed 7/18/25  P. v. Torres CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D082844 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE408553) |
| RAUL ALVAREZ TORRES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Patricia K. Cookson, Judge.  Affirmed.

Patricia L. Brisbois, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Senior Assistant Attorney General, Robin Urbanski, Supervising Deputy Attorney General and Anastasia Sagorsky, Deputy Attorney General for Plaintiff and Respondent.

A jury convicted Raul Alvarez Torres of multiple sex offenses against his daughter A.A.: continuous sexual abuse of a child under age 14 (Pen.

Code,[1] § 288.5, subd. (a); count 1), nine counts of forcible lewd acts upon a child under the age of 14 (§ 288, subd. (b)(1); counts 2-10), and two counts of committing a lewd act with a child the age of 14 or 15 (§ 288, subd. (c)(1); counts 11 and 12). It found true allegations as to counts 1 through 10 that the conduct occurred when A.A. was under the age of 18 and that the criminal action commenced before A.A.'s 40th birthday (§ 801.1, subd (a)); as to counts 2 through 10 that defendant used force, violence, duress, menace or fear of immediate and unlawful bodily injury (§ 1203.066, subd. (a)(1)); and as to counts 1 through 6, 9 and 10 that defendant had substantial sexual conduct with A.A. (§ 1203.066, subd. (a)(8)). The court sentenced defendant to a total prison term of 66 years, consisting of a 12-year midterm on count 1, six-year consecutive midterms on counts 2 through 10 and two-year midterms on counts 11 and 12, concurrent to each other and to counts 1 through 10.

Defendant contends his lewd act conviction on count 12—based on allegations that he had orally copulated A.A. "[o]n or about and between the dates of March 3, 2013[,] and March 2, 2014"—is unsupported by evidence that he committed that offense within that date range, when A.A. was 15 years old. We reject the contention and affirm the judgment.

FACTS

*A.A.'s Trial Testimony*

A.A. was born in March 1998, and was age 25 at the time of trial. She testified that defendant, her biological father, began touching her inappropriately when she was four years old until she was 14 years old. According to A.A., he would put his hand on her vagina and other parts of her body regularly, sometimes daily and sometimes two to four times a week.

---

[1]     Undesignated statutory references are to the Penal Code.

2

Defendant told A.A. that if she ever said anything, that her family would get hurt or that she would destroy the family, which scared A.A.

Once A.A. turned 10, defendant began putting his mouth on her vagina and breasts. He put his mouth on her vagina "very often," and "more than once." A.A. tried to resist but defendant would grab her arms hard and pull her toward him. When A.A. was 12 years old, she told her mother that defendant had been touching her, but when her mother confronted defendant he denied it, and she told A.A. she did not know who to believe. Afterwards, defendant's inappropriate touching resumed.

When A.A. was 14 years old, she mentioned during Christmas that she wanted a particular portable music player. Defendant told her if she did not let him touch her vagina with his hands and mouth, she would not get it. A.A. eventually got the device, but when she resisted defendant, he took it away. A.A. testified that the incidents stopped happening when she was 14 years old; when she was 15, defendant did not touch her inappropriately.

*A.A.'s Recorded Conversation with Torres*

Years later, A.A. reported the conduct to police, and in July 2021, sheriff's department detectives arranged a controlled phone call between A.A. and defendant. During the call, A.A. asked if defendant remembered putting his mouth on her vagina, and he replied, "Yeah, I don't want to remember that, but yes. I did the horrible thing." A.A. said to defendant, "So, I remember that you—you touched me [ ]till I was 14. Why—why did you stop?" Defendant replied that he did not remember.

*Defendant's September 2021 Police Interview*

Sheriff's department detectives conducted a recorded interview with defendant in September 2021 following his arrest. The detective asked about defendant's family and what was "going on," telling defendant he knew A.A.

3

has "been struggling" and "trying to heal." Defendant admitted to making "mistakes" and said A.A. should "have justice on what happened to her . . . [f]rom what I did to her." He described himself as "an animal." Defendant admitted touching, rubbing, and kissing A.A. inappropriately, including when he told her he would buy her the music playing device when she was 14 years old. Defendant agreed that he stopped his conduct "like 14 or 15."

*Detective's Testimony*

An investigating officer who had interviewed A.A., testified A.A. had reported that the music playing device incident happened when she was "about 14 or 15" years old.

*Defendant's Testimony*

Defendant denied touching A.A. inappropriately. He claimed he made his admissions to A.A. on the controlled phone call out of concern A.A. was suicidal. He felt he had to "cooperate" with her under the circumstances.

DISCUSSION

I. *Standard of Review*

"In considering a sufficiency of the evidence claim, we review 'the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] Substantial evidence is ' "evidence that 'reasonably inspires confidence and is of "solid value." ' " ' " (*People v. Collins* (2025) 17 Cal.5th 293, 307.) " 'We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also

4

reasonably be reconciled with a contrary finding.' " (*People v. Westerfield* (2019) 6 Cal.5th 632, 713.)

The test is whether substantial evidence supports the jury's conclusion (*People v. Johnson* (1980) 26 Cal.3d 557, 576-578), not whether the reviewing court would reach the same conclusion (see *People v. Cravens* (2012) 53 Cal.4th 500, 507-508). Reversal is not warranted " 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." ' " (*Id.* at p. 508.) " 'The uncorroborated testimony of a single witness is sufficient to sustain a conviction, unless the testimony is physically impossible or inherently improbable.' " (*People v. Panah* (2005) 35 Cal.4th 395, 489; *People v. Riazati* (2011) 195 Cal.App.4th 514, 532.) "We do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses." (*Riazati*, at p. 532; *People v. Jones* (1990) 51 Cal.3d 294, 314 [reviewing court must "not substitute our evaluation of a witness's credibility for that of the fact finder"].)

## II. *The Evidence is Sufficient to Support Count 12*

Defendant contends the trial evidence did not show he orally copulated A.A. after she turned 15 years old, and thus his count 12 conviction under section 288, subdivision (c)(1) must be reversed. He points to A.A.'s trial testimony that he did not touch her inappropriately when she was 15 years old as well as her comments in the pretext phone call recalling he had touched her "till she was 14" and asking why he stopped. Defendant points out he did not admit to police that he committed an act of oral copulation on A.A. after she turned 15. Thus, while he concedes the evidence is sufficient to establish count 11, an offense involving oral copulation after A.A. turned 14, he maintains there was no evidence he did so after she turned 15.

The People respond that the evidence shows defendant admitted orally copulating A.A. when she was 14, he admitted perpetrating multiple sex acts on her starting when she was a child, he told police that he stopped touching A.A. when she was 14 or 15, and A.A. told police that the Christmas incident took place when she was 14 or 15. Relying on *People v. Garcia* (2016) 247 Cal.App.4th 1013 and *People v. Jones*, *supra*, 51 Cal.3d 294, the People maintain that generic testimony by A.A. is sufficient when the perpetrator resides with the child. They argue given the allegations and verdict forms, the date range specified in count 12 was not dispositive: "Since the evidence showed and the jury evidently believed that [defendant] committed more than one act of oral copulation of A.A. after she turned 14, sufficient evidence supported the conviction in count 12."

We agree with the People that the record contains substantial evidence to support Torres's count 12 oral copulation conviction, based on allegations that the offense occurred "[o]n or about and between March 2, 2013[,] and March 2, 2014 . . . ." Torres's challenge would have us believe testimony (from A.A.) suggesting his conduct stopped when A.A. was 14 years old and reject evidence (from Torres's police interview) that he stopped molesting A.A. when she was age 14 or 15. Further, A.A. reported to the interviewing detective an act of oral copulation that occurred when she was 14 *or* 15. We are not permitted to reweigh the evidence or judge credibility on our substantial evidence review; we merely look to whether there is evidence of solid value to support the jury's verdict. (*People v. Jones*, *supra*, 51 Cal.3d at p. 314.) This record contains such evidence.

Setting that aside, we would still conclude A.A.'s generic testimony is sufficient to support defendant's count 12 conviction. In *People v. Jones*, *supra*, 51 Cal.3d 294, the Supreme Court addressed the "minimum quantum

6

of proof necessary to support a conviction" for sex abuse crimes against a child. (*Id*. at p. 314.) *Jones* observed that "[c]hild molestation cases frequently involve difficult, even paradoxical, proof problems. A young victim . . . , assertedly molested over a substantial period by a parent or other adult residing in his home, may have no practical way of recollecting, reconstructing, distinguishing or identifying by 'specific incidents or dates' all or even any such incidents." (*Id*. at p. 305.) It stated that "even [a child victim's] generic testimony (e.g., an act of intercourse 'once a month for three years') outlines a series of *specific,* albeit undifferentiated, incidents *each* of which amounts to a separate offense, and *each* of which could support a separate criminal sanction." (*Id*. at p. 314.)

*Jones* thus upheld a defendant's convictions of six counts of lewd conduct against a child victim, each alleged to have occurred in a different two-month period. (*People v. Jones*, *supra*, 51 Cal.3d at pp. 301, 303, 315-316.) "[T]he victim's failure to specify precise date, time, place or circumstance" did not "render generic testimony insufficient." (*Id*. at p. 315.) The victim must "describe the kind of act or acts committed with sufficient specificity, both to assure that unlawful conduct indeed has occurred and to differentiate between the various types of proscribed conduct (e.g., lewd conduct, intercourse, oral copulation or sodomy)"; "describe the number of acts committed with sufficient certainty to support each of the counts alleged in the information or indictment (e.g., 'twice a month' or 'every time we went camping')"; and "describe the general time period in which these acts occurred (e.g., 'the summer before my fourth grade,' or 'during each Sunday morning after he came to live with us'), to assure the acts were committed within the applicable limitation period." (*Id*. at p. 316, italics omitted.) It pointed to another case in which the victim "specified the type of conduct

7

involved (rape) and its frequency ('almost every night' for three months), and confirmed that such conduct occurred during the limitation period." (*Ibid*.) "Nothing more is required to establish the substantiality of the victim's testimony in child molestation cases." (*Ibid*.)

Subsequently, the Court of Appeal in *People v. Garcia, supra*, 247 Cal.App.4th 1013 rejected a defendant's argument on appeal that, applying *Jones*, substantial evidence did not support his eight forcible lewd act convictions involving a child where the information alleged four counts were committed in one year, and four the next, because "no evidence linked particular acts of abuse to those specific one-year periods." (*Garcia*, at pp. 1015, 1022.) The *Garcia* court explained: " 'The law is clear that, when it is charged that an offense was committed "on or about" a named date, the exact date need not be proved unless the time "is a material ingredient in the offense" . . . , and the evidence is not insufficient merely because it shows that the offense was committed on another date.' " (*Id*. at p. 1022.) *Garcia* emphasized that "[t]he jury was not obligated to match the counts to one-year periods. Indeed, it was instructed that '[t]he People are not required to prove that the crime took place exactly on that day but only that it happened reasonably close to that day.' " (*Id*. at p. 1023.)

We apply *Garcia*'s and *Jones*'s principles here, where A.A., now an adult, testified based on her memories of lengthy periods of childhood sexual abuse. A.A. testified in a generic manner that defendant would touch her "regularly," which happened "too often," sometimes every day of the week or two to four times per week. The touching occurred frequently enough that "it wouldn't go more than a week without." And A.A. described defendant's acts with sufficient specificity to differentiate the various types of conduct, including defendant's acts of oral copulation. As in *Jones* and *Garcia*, the

8

People were not obligated to prove exactly when each act of oral copulation took place, " 'but only that it happened reasonably close' " (*Garcia, supra*, 247 Cal.App.4th at p. 1023) to the alleged time period.

In his reply brief, defendant argues the sole incident of oral copulation argued by the prosecutor was the Christmastime incident, which occurred after A.A. turned 14. He tries to distinguish *Jones* and *Garcia* on the ground those cases involved generic testimony about lewd acts that occurred within the general timeframe, and thus supported the charged offense. He relies on *People v. Mejia* (2007) 155 Cal.App.4th 86, for the proposition that generic testimony "cannot be so vague that the trier of fact can only speculate as to whether the statutory elements [of the alleged offense] have been satisfied." (*Id.* at p. 97.)

At the cited portion of *Mejia* pertaining to the jury's speculation, the court was addressing whether the evidence supported the defendant's conviction under a different statute: continuous sexual abuse of section 288.5, which requires that the defendant engage in " 'three or more acts of substantial sexual conduct' " with a child under 14 years of age over a period of at least three months. (*Mejia, supra,* 155 Cal.App.4th at pp. 93-94.) The People charged the defendant with acts occurring " 'on or between June 1, 2004[,] and September 17, 2004.' " (*Id.* at p. 93.) The victim testified the defendant had molested her 10 times in June and July and at least twice in September, and that while he molested her " 'two or three days a week,' " it did not occur every week. (*Id.* at p. 95.) The Court of Appeal held that while the jury could reasonably infer that "defendant's abuse began sometime in June and continued to some date in September . . . [it] could only speculate that the first incident occurred early enough in June to satisfy the 90-day requirement expiring on September 17, 2004." (*Id.* at p. 95.)

9

*Mejia* is inapposite, as it involved an offense critically dependent on a particular time frame. The case is distinguishable in another important way, relevant to defendant's count 12 offense at issue in this case. Contrary to the victim in *Mejia,* who stated the defendant did not molest her every week within the designated time period (*People v. Mejia, supra,* 155 Cal.App.4th at p. 95), A.A. testified defendant molested her either daily or multiple times a week. In *Mejia,* the jury could not infer that the abuse occurred regularly because the victim stated that it did not occur every week. (*Ibid.*) But here, the jury could reasonably conclude defendant's abuse occurred regularly such that more than one incident of oral copulation took place at or around the time when A.A. was 14 or 15 years old. It was for the jury, not this court, to pick and choose what parts of each witness's testimony it accepted as credible. (*In re Daniel G.* (2004) 120 Cal.App.4th 824, 830 ["[A] trier of fact may believe and accept as true only part of a witness's testimony and disregard the rest"].)

DISPOSITION

The judgment is affirmed.

O'ROURKE, Acting P. J.

WE CONCUR:

DATO, J.

DO, J.

10