Filed 9/25/25  P. v. Mattea CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C101544 |
| Plaintiff and Respondent, | (Super. Ct. No. 22F03480) |
| v. | |
| WILLIAM JOHN MATTEA, | |
| Defendant and Appellant. | |

A jury found defendant William John Mattea guilty of 86 counts of various sexual offenses.  It also found true a one strike special circumstance allegation under Penal Code[1] section 667.61, subdivision (e)(4), which applied to multiple convictions.  The trial court sentenced defendant to 810 years to life, plus seven years eight months in prison. On appeal, defendant contends insufficient evidence supports multiple counts of oral

---

[1]     Further undesignated section references are to the Penal Code.

1

copulation of one victim and multiple counts of sexual penetration and lewd acts on another. We agree as to three counts of lewd acts and accordingly reverse defendant's convictions for lewd acts in counts 83 through 85. We further strike the eight-month sentence imposed for each of those counts. The judgment is affirmed as modified.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant was Mary S.'s uncle. When Mary was five years old, defendant started touching her upper inner thigh. When Mary was "like nine or ten" years old, she would go to defendant's house "at least a few times a week" and he would put his fingers in her vagina "probably every other time [she] went there" for a visit. This conduct stopped when she was 15 years old. At 11 or 12 years old, defendant penetrated Mary's vagina with his penis while the two laid on his bed watching television. This happened "a few times a month" until she was 13 or 14 years old. When Mary was 11 or 12 years old, defendant started orally copulating her a few times a month until she was 13 or 14 years old. From when Mary was 12 years old until she was 13 or 14 years old, defendant infrequently penetrated her rectum with his penis and fingers. Defendant attempted to penetrate Mary's vagina with his fingers and his penis while swimming alone with her in the pool, but he could not accomplish the act. The last time defendant touched Mary while the two were alone in the pool was when Mary "was, like, 14 [years old]."

Emily D.'s parents were friends with defendant and his wife. Emily spent much of her childhood with defendant and thought of him as an uncle. When she was growing up, she visited his house a few times a month. "[M]ostly every time [she went] over," he took her into his office and made her watch pornography while sitting on his lap. When Emily sat on defendant's lap, she felt his erection against her buttocks.

When Emily was five years old, she gave defendant massages every time she visited his house, and the massages included her touching his penis. After these massages, defendant would remove Emily's clothes and give her a massage that included touching her vagina. One time when Emily was six or seven years old, defendant put

2

chocolate in her vagina and licked it. During her trial testimony, Emily did not remember defendant putting his mouth on her vagina any other time. In a forensic interview before trial, Emily said defendant licked her vagina "maybe every few times [she went] over. Like every once in a while. Maybe like once or twice a month" from when she was in kindergarten until second grade.

Whenever defendant and Emily swam together in his pool, Emily would use her foot to massage defendant's penis into an erection. This happened more than 10 times a month during the summer. Defendant's behavior stopped at the start of the COVID-19 pandemic when Emily was in seventh grade.

Based on the above facts, the jury found defendant guilty of 86 offenses, including 10 counts of oral copulation of Emily when she was 10 years of age or younger, five counts of sexual penetration of Mary when she was 10 years of age or younger, and five counts of lewd acts on Mary when she was 14 or 15 years old. The jury also found true a one strike special circumstance allegation, which applied to multiple convictions. The trial court sentenced defendant to 810 years to life, plus seven years eight months in prison.

Defendant appeals.

DISCUSSION

Defendant contends insufficient evidence supports multiple counts of oral copulation of Emily and multiple counts of sexual penetration and lewd acts on Mary. We agree in part.

I

*Applicable Law*

A defendant challenging the sufficiency of the evidence bears an "enormous burden." (*People v. Sanchez* (2003) 113 Cal.App.4th 325, 330.) "It is the exclusive function of the trier of fact to assess the credibility of witnesses and draw reasonable inferences from the evidence." (*Ibid.*) Thus, when considering a challenge to the

sufficiency of the evidence, we view the facts in the light most favorable to the judgment, resolving all conflicts in the evidence and drawing all reasonable inferences in support of the trier of fact's determination. (*People v. Campbell* (2020) 51 Cal.App.5th 463, 483-484.) We reverse only if, viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Ibid*.)

In *People v. Jones* (1990) 51 Cal.3d 294 (*Jones*), our Supreme Court addressed the quantum of proof necessary to support a conviction in a child molestation case. (*Id*. at pp. 314-316.) Our Supreme Court held that even "generic" testimony regarding multiple molestations over a period of time—unspecific as to time, place, or circumstance—is sufficiently substantial to support a conviction. (*Id*. at pp. 313-315.) Our Supreme Court reasoned that "the particular details surrounding a child molestation charge are not elements of the offense and are [therefore] unnecessary to sustain a conviction." (*Id*. at p. 315.) To provide substantial evidence, the victim merely must describe (1) "the kind of act or acts committed with sufficient specificity" to assure that unlawful conduct indeed "occurred and to differentiate between the various [acts] of proscribed conduct"; (2) "the number of acts committed with sufficient certainty to support each of the counts alleged"; and (3) "the general time period in which the acts occurred . . . , to assure the acts were committed within the applicable limitation period." (*Id*. at pp. 315-316, italics omitted.) "Additional details regarding the time, place or circumstance of the various assaults may assist in assessing the credibility or substantiality of the victim's testimony, but are not essential to sustain a conviction." (*Id*. at p. 316.)

In *Jones*, the victim testified that molestations recurred once or twice a month over a roughly two-year period of time. (*Jones*, *supra*, 51 Cal.3d at pp. 303, 322-323.) Our Supreme Court held that the victim's testimony constituted substantial evidence to support the six counts of child molestation, each charging one event in a different two-month period. (*Ibid*.) The court cited with approval the analysis in *People v. Moore*

4

(1989) 211 Cal.App.3d 1400, in which "the victim specified the type of conduct involved (rape) and its frequency ('almost every night' for three months), and confirmed that such conduct occurred during the limitation period," concluding that "[n]othing more is required to establish the substantiality of the victim's testimony in child molestation cases." (*Jones*, at p. 316; see also *People v. Garcia* (2016) 247 Cal.App.4th 1013, 1023 [evidence sufficient because it proved that the defendant committed at least the number of offenses charged].)

## II

### *Sufficient Evidence Supports All But Three Counts Of Lewd Acts On Mary*

All of defendant's contentions center around the assertion that Mary's and Emily's testimony lacked sufficient certainty to sustain multiple convictions for certain offenses. For example, defendant concedes Emily's testimony about the chocolate incident was sufficient to sustain one conviction for oral copulation when she was 10 years of age or younger. He contends, however, Emily's statements during her forensic interview—that he licked her vagina "maybe every few times [she went] over [to his house,] [l]ike every once in a while[,] [m]aybe like once or twice a month" when she was in kindergarten until second grade—were insufficient to convict him of any further counts for oral copulation when she was 10 years of age or younger. Defendant classifies Emily's testimony regarding the frequency of the acts as being equivocal and ambiguous, especially when considered with her trial testimony that she did not remember specific acts of oral copulation.

Emily's forensic interview was offered for the truth. Whether Emily's statements during testimony or during her forensic interview were more credible was an issue reserved for the jury. (*People v. Little* (2004) 115 Cal.App.4th 766, 771 ["we do not . . . reevaluate the credibility of witnesses"].) Given the jury convicted defendant of 10 counts of oral copulation of Emily, it necessarily accepted Emily's statements during her forensic interview as more credible than her trial testimony. We are bound by this

5

credibility determination (*People v. Curl* (2009) 46 Cal.4th 339, 342, fn. 3); and thus, we will analyze Emily's statements during the forensic interview for sufficient evidence.

Construing Emily's statements that defendant licked her vagina "[m]aybe like once or twice a month" from kindergarten until second grade narrowly, Emily still said defendant orally copulated her over the course of two years when she was 10 years of age or younger at least once a month. This is sufficient to sustain the nine counts of oral copulation defendant challenges on appeal. (Cf. *People v. Tompkins* (2010) 185 Cal.App.4th 1253, 1261 [sufficient evidence supported conviction for two counts of digital penetration where the minor testified it happened "once, maybe twice" and the investigator testified the victim previously recalled two to three occasions].) While Emily may have expressed uncertainty at the frequency of the acts of oral copulation, her uncertainty was to the upper range of occurrences and not the lower range. Defendant was convicted of nine counts of oral copulation in addition to the chocolate incident, which is supported by the lower range of frequency Emily accounted for in her statements during the forensic interview. (See *People v. Garcia*, *supra*, 247 Cal.App.4th at p. 1023.)

For the same reasons, sufficient evidence supports defendant's convictions for five counts of sexual penetration of Mary when she was 10 years of age or younger. Mary testified that when she was "like nine or ten" years old, she would go to defendant's house "at least a few times a week" and he would put his fingers in her vagina "probably every other time [she] went there" for a visit. Assuming the lesser range of occurrences, i.e., that defendant's conduct occurred when Mary was only 10 years old and a single time every week, Mary provided more than sufficient evidence to account for five acts of sexual penetration when she was 10 years of age or younger. Contrary to defendant's contention, Mary's use of the word probably when testifying to the frequency of defendant's acts of sexual penetration does not undermine the reasonable inference that at least five acts of sexual penetration occurred when Mary was 10 years of age or younger.

6

All that is required is testimony to "the *number of acts* committed with sufficient certainty to support *each of the counts alleged*." (*Jones*, *supra*, 51 Cal.3d at pp. 315-316, some italics added.) Mary's testimony met that standard.

Finally, defendant argues Mary's testimony was insufficient to convict him of four of the five counts of lewd acts committed on her when she was 14 or 15 years old. He contends Mary's estimation of her age was too uncertain to substantiate more than one count of lewd acts during the age range alleged. The People agree three of the five convictions must be reversed but argue two are supported by sufficient evidence. We agree with the People.

Mary testified defendant's conduct of digitally penetrating her vagina continued until she was 15 years old. Mary did not specify the frequency of the conduct at this time in her life, providing sufficient evidence defendant digitally penetrated her at least one time when she was between the ages of 14 and 15 years old. Mary further testified the last time defendant touched her inappropriately while the two were alone in the pool was when Mary "was, like, 14 [years old]." This testimony is sufficient to sustain an additional conviction for lewd acts on Mary when she was 14 or 15 years old. Contrary to defendant's contention, Mary's use of the word "like" when describing her age does not undermine the reasonable inference that at least one count of lewd acts occurred while she was in the pool with defendant when she was 14 years old. Accordingly, Mary's testimony provided sufficient certainty two counts of lewd acts occurred when she was 14 or 15 years old. The remaining lewd acts convictions committed on Mary when she was 14 or 15 years old lack evidentiary support through Mary's testimony and must be reversed.

## DISPOSITION

Counts 83 through 85 are reversed and the eight-month sentence imposed for each of those counts is stricken.  The judgment is affirmed as modified.  The trial court shall prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.

/s/
ROBIE, J.

We concur:

/s/
HULL, Acting P. J.

/s/
BOULWARE EURIE, J.

8